**Robert A. PFLUGER and Elaine M. Pfluger, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 87–1503.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1988.

Decided March 7, 1988.

ages against the defendants in their individual capacities based on state law, must be reinstat-

ed.

of income to a trust controlled by the taxpayer. *See Schulz v. Commissioner,* 686 F.2d 490 (7th Cir.1982). In that opinion, Judge Cummings said:

> Given the deeply rooted instinct not to pay more taxes than the law requires and the endless changes that can be rung on trust draftsmanship, we do not suppose that any single opinion can put a definitive end to ... family trusts.

*Id.* at 497. This case involves an altered version of the family trust device disallowed in *Schulz.* We find that the new version leads to the same legal conclusions. We also find petitioners' other contentions meritless and affirm the Tax Court's decision upholding a deficiency and negligence penalty.

## I.

Petitioner Robert Pfluger,[1] a dentist, became disillusioned with the federal income tax system after having to borrow money to pay his 1979 taxes. He undertook extensive research into the tax system and concluded that the federal income tax was an unconstitutional "leveling" device.[2] He also attended meetings of individuals interested in reducing their tax burden; at one such meeting he learned about "family trusts."

Dr. Pfluger was intrigued by the potential tax benefits that the family trust arrangement seemed to provide. He was, however, aware that similar devices had been struck down by the courts and the Internal Revenue Service (the "IRS"). Nonetheless, after a brief consultation with his attorney and numerous conversations with the provider of the trust documents, Dr. Pfluger decided to forge ahead.

On February 23, 1980, Dr. Pfluger executed the "Family Trust Indenture of the Robert A. Pfluger Family Trust." Dr. Pfluger was the grantor of the trust. In return for the entire beneficial interest he assigned "the exclusive use of his lifetime

Joseph W. Weigel, Milwaukee, Wis., for petitioners-appellants.

Steven W. Parks, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

Six years ago this court attempted to thwart the proliferation of "family trusts," tax avoidance devices that have as their central feature the anticipatory assignment

---

1. Elaine Pfluger, Robert Pfluger's wife, is a party solely because the couple filed a joint 1980 federal income tax return. Robert Pfluger was the wage earner and architect of the couple's tax strategy.

2. The Tax Court rejected this argument and Dr. Pfluger has wisely chosen not to challenge that determination here.

services" and certain specified property to the trust. *See* Petitioners' Exhibit 4 at 3. His wife and brother-in-law were the initial trustees, but within two days of the indenture's execution Dr. Pfluger had replaced his brother-in-law as co-trustee. *See* Petitioners' Exhibit 5 at 2. Thus, Dr. Pfluger was grantor, co-trustee and sole beneficiary of the family trust.[3]

Up to this point, the case before us resembled a "typical" family trust case, in which the taxpayer "assigns" his income to the trust and the trust funds are used to cover his personal expenditures, purportedly allowing deduction of those expenditures. *See, e.g., Schulz,* 686 F.2d at 492–93. This court in *Schulz,* and every other court to consider the issue in cases too numerous to catalogue, has held that this family trust arrangement is an invalid anticipatory assignment of income under *Lucas v. Earl,* 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 (1930). *See, e.g., Schulz,* 686 F.2d at 493.[4] Dr. Pfluger did not follow a straight assignment of income path, however; in fact, he did not attempt to assign his professional receipts directly to the trust. Instead, on February 25, 1980, two days after executing the indenture, he entered into a contract with the trust. The trust was represented in the "negotiations" by Dr. Pfluger and his wife. Under the contract the trust agreed to manage Dr. Pfluger's dental practice [5] in return for a management fee, expressed as a percentage of Dr. Pfluger's gross income. The percentage was left blank, to be filled in later by Dr. Pfluger.

After purportedly researching the average business expenses of dentists nationwide, Dr. Pfluger set the management fee at approximately sixty percent of his gross income.[6] On their 1980 tax return, the Pflugers reported $159,091 in gross income from the dental practice; they then deducted a "management fee" of $95,000 allegedly paid to the trust.[7] They also claimed deductions for office expenses and wages paid directly by Dr. Pfluger, all of which were to be paid by the trust under the February 25 contract. The trust in turn

---

3. Counsel for petitioner argued repeatedly in oral argument and his brief, *see, e.g.,* Petitioners' Brief at 7–8, 10, that Dr. Pfluger was not a trustee or beneficiary of the trust. In fact, he went so far as to say that there is *no* evidence that Dr. Pfluger was ever a trust beneficiary. *Id.* at 7. But, in fact, the trust indenture explicitly grants Dr. Pfluger the entire beneficial interest, and a February 25, 1980 contract between Dr. Pfluger and the trust was executed by Dr. Pfluger in his capacity as co-trustee. *See* Petitioners' Exhibit 4 (trust indenture); Petitioners' Exhibit 5 (contract). *Cf. infra* p. 1381 n. 6.

4. *Cf. United States v. Buttorff,* 761 F.2d 1056, 1060 (5th Cir.1985) (listing cases invalidating family trusts). Courts have relied on several other theories to strike down family trusts, but we, like the Tax Court, do not need to pursue them in this case.

5. The trust agreed to lease the dentist's office, purchase supplies and pay personnel.

6. We have difficulty determining the extent of that investigation. There is little evidence beyond Dr. Pfluger's own testimony. Petitioners' counsel seeks to bolster that testimony by apparent misrepresentations of the record. For example, in his main brief counsel states: "Pfluger even had his local representative contact the IRS and receive a letter from the IRS with figures as to the cost of operating a dental practice." Petitioners' Brief at 10 (citations omitted). That statement is incorrect and petitioners' counsel knows or should know that it is incorrect. After all, the brief cites to the letter itself, which has nothing to do with the cost of operating a dental practice. Instead, Dr. Pfluger asked his representative to solicit information on the percentage of income taxes paid by the wealthy, to support his argument that federal income taxes are an unconstitutional redistribution of wealth. *See* Petitioners' Exhibit 17.

The brief contains other misdirected contentions, such as an attempt to argue that a certified public accountant ("CPA") advised Dr. Pfluger throughout the process. *See, e.g.,* Petitioners' Brief at 21. The person in question testified that he did not become a CPA until 1983, several years after the events at issue here. *See* Transcript at 32 (June 26, 1984). Also, as noted *supra* p. 1381 n. 3, the brief repeatedly asserts that Dr. Pfluger was neither a trustee nor a beneficiary of the trust. That assertion is contradicted by documents signed by Dr. Pfluger. This is a misguided effort to wrongly characterize evidence. The line between zealous representation and overreaching is sometimes not clear; petitioners' counsel, however, is so far off the mark that we must admonish him to alter his conduct.

7. Dr. Pfluger presented no evidence that the $95,000 was ever paid to the trust. Indeed, the trust bank account balance never exceeded $30,000. *See infra* pp. 1383–84.

reported income of $95,000 and deductions of $61,280.

The IRS audited the Pflugers. It first determined that the trust should be disregarded for tax purposes. The government therefore sought to redetermine the Pflugers' tax by allowing the couple to directly deduct all substantiated business expenses, ignoring the management fee and treating expenses paid by the trust as expenses paid by the taxpayers. The Pflugers, however, refused to turn over *any* documents to the IRS. The Service was left with no choice; it disallowed the $95,000 deduction and all other deductions and assessed a deficiency of $42,762 and a negligence penalty under Internal Revenue Code section 6653(a), 26 U.S.C. § 6653(a), of $2,138.

The Pflugers petitioned the Tax Court for a redetermination of the deficiency. They then refused the government's repeated discovery requests, turning over only the trust indenture and the February 25 contract. The IRS moved for an order compelling compliance with discovery requests and for sanctions if the Pflugers continued their obstinate conduct. The Pflugers continued to refuse cooperation.

After a hearing on the sanctions motion, the court entered an order that states in part:

> [T]he petitioners are prohibited from introducing any of the documents which had been requested by the respondent in his request for production of documents and which had been ordered to be produced by the Court's order of May 25, 1984. The petitioners are also prohibited from attempting to prove the matters contained in any such documents by oral testimony or otherwise.

*Pfluger v. Commissioner*, No. 30209–82 (T.C. June 25, 1984) (order on sanctions motion). The initial oral order excluded only documents, but the court soon realized that such a limited order would "let [the taxpayers] prove that matter indirectly which [they] couldn't prove directly." Transcript at 30 (June 26, 1984). It would also give the taxpayers an unfair advantage, since they could testify as to documents not reviewed by the IRS. *Id.* Judge Simpson modified the order to preclude oral testimony about the documents; he still permitted third-party testimony (mostly by suppliers) based on third-party records introduced into evidence.

After trial, the Tax Court rejected the Pflugers' argument that the income tax is unconstitutional. It also disallowed the "management fee" deduction, finding that the fee was never paid to the trust and that the trust device was an invalid anticipatory assignment of income. The court allowed $32,824 in deductions substantiated by third-party records and reduced the section 6653(a) negligence penalty to $1,193.

The taxpayers appeal, raising five issues. First, they allege that the burden of proof should shift to the IRS because the initial deficiency notice was "arbitrary." Second, they contend that the court abused its discretion in excluding certain testimony under the sanctions order. Third, they argue that the court erred in disallowing the management fee deduction. Fourth, even if the court correctly disregarded the trust, the Pflugers assert that they proved certain other deductions through testimony and third-party records. Finally, petitioners say the negligence penalty was not justified. These claims are all meritless and we therefore affirm.

## II.

The threshold issue concerns the burden of proof. The general rule is that a presumption of correctness attaches to the Commissioner's deficiency determination; the taxpayer has the burden of disproving it. *See Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *see also Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir.1987). A narrow exception exists where the determination is arbitrary and erroneous or without rational foundation. *Ruth*, 823 F.2d at 1094; *see United States v. Janis*, 428 U.S. 433, 441–42, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Helvering v. Taylor*, 293 U.S. 507, 514–15, 55 S.Ct. 287, 290–91, 79 L.Ed. 623 (1935).

The Pflugers argue that the IRS arbitrarily denied all of their claimed deduc-

tions. They say the IRS was required to guess the amount they could have deducted, perhaps by allowing average dental business deductions. But they cite no authority for this contention; nor do they point us to any analogous uses of averaging by the IRS.

■ The Pflugers' argument is clearly wrong when viewed in context. They willfully refused to cooperate with the audit. They cannot thereby force the Commissioner to resort to "averages" to estimate the deductions that they could have taken. If that were the case, nobody would cooperate with an audit. The use of estimates could often result in allowance of more deductions than the taxpayer was actually entitled to take; if it did not, the taxpayer would simply petition for a redetermination and substantiate greater deductions. The Tax Court has correctly rejected such a rule in prior cases. *See, e.g., Roberts v. Commissioner*, 62 T.C. 834, 836 (1974). We agree with the Tax Court that the deficiency notice was not arbitrary.

### III.

A second tangential question is whether the Tax Court abused its discretion by excluding certain testimony. The argument, as stated in Petitioners' Brief at 27–30, begins with the true statement that the sanctions order only foreclosed use of documents not given to the IRS and testimony about those documents. The IRS had the trust's tax return, which noted numerous deductions. Therefore, because the return itself was not within the court's order, the taxpayers contend that the court should have allowed them to introduce testimony as to the deductions claimed on the return.

■ This argument is transparently wrong. All of the unsubstantiated deductions were, of course, on the tax return. Therefore, if we were to accept this conten-

tion, the sanctions would be meaningless. By saying that the testimony offered is really testimony as to the tax returns' contents, not as to the excluded documents' contents, the Pflugers tried to escape the order's clear intent. The court was well within its discretion in cutting off this end run around the order.[8]

### IV.

We now reach the central issue. The Tax Court held that Dr. Pfluger never paid the $95,000 management fee and, alternatively, that the family trust arrangement was an invalid anticipatory assignment of income. Either holding supports the Commissioner's decision to disregard the form of the trust device and to disallow the management fee deduction.

■ We will reverse the Tax Court's factual finding that Dr. Pfluger never paid the $95,000 fee only if that determination is clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Cassidy v. Commissioner*, 814 F.2d 477, 481 (7th Cir.1987). Keeping in mind that the burden of proof lies with the taxpayers, we come to the firm conclusion that the finding is not clearly erroneous. The evidence cited by the petitioners in support of their claim consists solely of Dr. Pfluger's testimony and the tax returns listing the payments. *See* Petitioners' Brief at 7. We have searched the record in vain for more objective evidence that the money was paid.

Indeed, we discovered that the objective evidence tends to support the Tax Court's finding. First, the trust's bank records show no $95,000 deposit. *See* Petitioners' Exhibit 9. In fact, the largest deposit to the trust bank account during 1980 was $5,000. *Id.* Further, the purpose for which the fee was purportedly paid is illu-

---

8. Likewise, the court was within its discretion to foreclose Dr. Pfluger's attempt to testify as to the purpose of certain checks. The Pflugers refused to turn over their copies of the checks and invoices; the bank turned over copies of account statements, which list only dates and payments. *See* Petitioners' Exhibit 9. Dr. Pfluger attempted to testify as to the payees and purposes, but the court was within its discretion in disallowing this testimony because the bank statements, the only documentary evidence in the record, did not supply that information. In effect, Dr. Pfluger tried to provide orally the information on checks and invoices he had refused to turn over.

sory. Dr. Pfluger contracted for the trust to pay his rent, personnel salaries and other business expenses. In fact, the Pflugers' own tax return acknowledges that Dr. Pfluger continued to pay many expenses directly. No one would pay another [9] $95,000 for work and then continue to do the work himself. The Tax Court's finding is not clearly erroneous; the $95,000 deduction was properly disallowed.

Although that finding is outcome-determinative, we feel it is appropriate to discuss the Tax Court's alternative holding, that the family trust was invalid as an anticipatory assignment of income. We do so in order to rebut the suggestion that the instant variation on the well-known family trust scheme achieves legitimacy. In *Schulz*, we acknowledged the difficulty of drafting one opinion covering all the variations on family trusts. *Schulz*, 686 F.2d at 497. We now hope to snuff out any aspirations based on the Pflugers' approach.

In the typical family trust case, the taxpayer's income and property are transferred into a trust controlled by the taxpayer; the trust then pays the taxpayer's personal expenditures and sometimes returns part of his wages to the taxpayer as a management fee. *See, e.g., Schulz*, 686 F.2d at 491–93; *Horvat v. Commissioner*, 671 F.2d 990 (7th Cir.1978) (per curiam), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed. 2d 772 (1979). In *Schulz*, we held that family trusts are anticipatory assignments of income—invalid under the doctrine of *Lucas v. Earl*, 281 U.S. 111, 50 S.Ct. 241. The Supreme Court in *Earl* held that where a taxpayer tries to assign his income to family members or an entity under his control in order to gain undue tax benefits,[10] a court should look beyond "attenuated subtleties" and decide the case based on "the import and reasonable construction of the taxing act." *Id.* at 114, 50 S.Ct. at 241. The Court continued:

There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skillfully devised to prevent the salary from vesting even for a second in the man who earned it. *Id.* at 114–15, 50 S.Ct. at 241.

In *Schulz*, we disallowed the family trust under this theory. The key circumstance justifying invalidation is the assignment of income to an entity controlled by the taxpayer or his family. In effect, the taxpayer assigns his services to himself in return for promising to pay himself for those services or for managing the trust (his assets). Because the trust is controlled by the taxpayer, any surface obligation to perform services in order to receive income from the trust is illusory. "The grantor in his capacity as employee and as trustee or trust manager is on both sides of the transaction. There is no one to enforce the ostensible obligation." *Schulz*, 686 F.2d at 494.

■ Here we have the converse of that family trust structure. As in *Schulz*, Dr. Pfluger was grantor, co-trustee and beneficiary of the trust. With his wife he exercised complete control over the trust. But, unlike the trust structure in *Schulz*, Dr. Pfluger did not transfer all his income to the trust and have the trust pay him a fee or salary. Instead, he did the opposite. He took the income himself, then paid the trust a large management fee, which he deducted on his return. Despite the new approach, the income-splitting effect is similar to that of the *Schulz*-type family trust —the trust declared part of Dr. Pfluger's income and he declared the rest. *See supra* p. 1384 n. 10. Here, in effect, he pays himself a fee for managing the dental practice, deducting the fee on his tax form. Since he is bargaining with himself, he can set the fee at whatever amount achieves the greatest tax savings. He is thereby

---

**9.** Whether the trust was in fact a separate entity or simply the Pflugers' alter ego is another question. *See infra* pp. 1384–85.

**10.** Those benefits may include "income-splitting." The first dollars earned by a taxpayer are taxed at a lower rate than the last dollars due to the traditionally progressive nature of the tax system. By splitting one's income between two entities or people, a taxpayer gets two trips through the lower brackets, resulting in a lower overall tax bill. *See also Schulz*, 686 F.2d at 493 (discussing tax benefits of typical family trust).

allowed two excursions through the lower tax brackets, reducing his overall taxes. In addition, as with the typical family trust, the arrangement may allow him to disguise certain improper deductions as trust activity.[11] *See Schulz*, 686 F.2d at 492–93.

Petitioners argue that this strategy differs from a family trust, that the IRS was confused by the taxpayers' use of the term "family trust," and that in fact this case involves payments to a "management entity to manage the 'nuts and bolts' of [the] dental practice." Petitioners' Brief at 12. We disagree. While the IRS cannot disregard any and all trusts merely by calling them "family trusts," the label is appropriate here. As shown above, there was no independent "management entity." The taxpayers attempted to assign income to a trust under their control in order to avoid taxes. That constitutes an anticipatory assignment of income under *Schulz* and *Earl.*

Our result finds support in the Eleventh Circuit's decision in *O'Donnell v. Commissioner*, 726 F.2d 679 (11th Cir.1984), the only case we can locate where a taxpayer raised similar arguments. In *O'Donnell*, the taxpayers argued that their trust was not a "family trust" because income flowed first to the taxpayer then to the trust. The court, recognizing that the arrangement differed from typical family trusts, characterized it as "an even less sophisticated attempt to accomplish the same objective." *Id.* at 681. We think that where a taxpayer attempts to shift income to an entity under his unfettered control, the IRS can disregard the form of the transaction.

## V.

Although the Tax Court disregarded the family trust and disallowed the $95,000 deduction, it upheld certain deductions for business expenses substantiated by the Pflugers. The taxpayers appeal from the court's denial of other deductions. Once again we will reverse factual findings only if clearly erroneous.

### A. LEGAL FEES

■ The Tax Court upheld an $1,826 deduction for legal fees, but the taxpayers assert that they proved $3,826 in 1980 legal fees for a case arising out of the dental practice. The Pflugers rely on testimony by the law firm bookkeeper to the effect that "$940.00 ... was paid on March 19, 1980 and the total of $2,886.09 paid in full January 4, 1980." Transcript at 19 (June 26, 1984). But this testimony is ambiguous. The phrase "paid in full January 4, 1980" might be construed to mean "paid in full *on* January 4, 1980" or "paid in full *by* January 4, 1980." That distinction makes a great difference. The Pflugers, as cash basis taxpayers, were only entitled to deduct payments made in 1980.

Petitioners' Exhibit 8 resolves the ambiguity. That exhibit, a summary of legal services and payments, states that $900 was paid on January 4 to pay off the remaining $886.09 debt, leaving a surplus of $13.91. The rest, according to this exhibit, was paid in 1979.[12] The Pflugers were entitled to a deduction of $886 for the January payment plus a $940 deduction for the March payment, a total of $1,826. The Tax Court's determination is supported by the record.

### B. LAB EXPENSES

■ The court allowed $17,161 in deductions for lab expenses. Petitioners assert that a total of $27,026 should have been allowed. The evidence cited in support of the additional $9,865 is not probative. Petitioners' Brief refers us to tax returns, bank statements, unreadable checks, an irrele-

---

**11.** For example, the family trust's bank account paid several checks to a car dealer, presumably for the Pfluger family vehicle. The record does not reveal whether these payments were claimed as deductions by the trust.

Ironically, in this case the trust may have led to fewer tax benefits than would have been obtained without the device. Because he was self-employed, Dr. Pfluger had numerous legitimate business deductions. He did not need to disguise those deductions.

**12.** The years are unstated, but the bookkeeper's testimony as to a January 4, 1980 payment, when viewed in conjunction with the exhibit, removes the ambiguity.

vant stipulation and the testimony of a bank official who apparently had nothing to do with the alleged transactions. *See* Petitioners' Brief at 16. We find no substantial evidence calling the Tax Court determination into question.

## C. DENTAL MATERIALS

■ The taxpayers argue that the Tax Court improperly disallowed $10,138 in expenses for dentures, novocaine, drill bits, needles and other dental supplies and equipment. The only citation in support of these deductions is a reference to Dr. Pfluger's testimony. The claimed deductions have no documentary support.

Further, petitioners make the argument that we should allow the deductions based solely on the Pflugers' assertion that materials were necessary for the dental practice. "[I]t is certaintly [sic] illogical to assume that one can operate a dental practice ... and not have any expenditures for ... materials." Petitioners' Brief at 15–16. That assertion misses the point. The Pflugers had the burden of producing persuasive evidence to support their claimed deductions. Undoubtedly Dr. Pfluger spent money on materials, but he refused to produce the evidence to *prove* those expenditures. We cannot simply guess as to the amount he could have deducted. He chose his uncooperative path; the fact that he will pay more tax than if he had been more forthright should not cause us to bend the law in his favor.

## VI.

Finally, we reach the section 6653(a) negligence penalty. Section 6653(a) adds five percent to the deficiency where the taxpayer is negligent or intentionally disregards rules and regulations. The Commissioner's determination is presumed correct and the taxpayer bears the burden of disproving it. *See Salapatas v. Commissioner*, 446 F.2d 79, 82 (7th Cir.1971).

■ Dr. Pfluger says he relied on research and experts when making his tax decisions and that he therefore should not be liable for the negligence penalty. There are a number of answers to this contention.

We noted six years ago in *Schulz* that use of family trusts would invite negligence penalties. *See Schulz*, 686 F.2d at 497. Although the present case presents a variation on the typical family trust, it falls within the scope of the *Earl* doctrine, which has been well-known for over fifty years.

Further, Dr. Pfluger used the family trust device even after being informed that the IRS was challenging it in other cases. This should have put him on notice to research the law carefully. He failed to proceed with the requisite degree of care.

Finally, Dr. Pfluger's asserted belief that the federal income tax system is an unconstitutional redistribution of wealth, to the extent it served as a basis for his actions, cannot justify them. A little research in conventional sources would have shown him that this argument has never prevailed. *See, e.g., Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916). In short, the negligence penalty is justified in this case.

## VII.

This case, like other tax protester cases, should never have been brought. Dr. Pfluger, upset at paying federal income taxes, has taken actions resulting in needless expenditure of tax dollars for lawyers, courts and even the expense of printing this opinion. All of petitioners' contentions are without merit. We affirm the judgment of the Tax Court, with costs to the respondent.

AFFIRMED.