LITTLE CITY FOUNDATION, Plaintiff-Appellant, v. CAPSONIC GROUP, INC., *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—91—1314

Opinion filed June 25, 1992.

Daley & George, Ltd., of Chicago (John J. George and Dennis J. Aukstik, of counsel), for appellant.

Winston & Strawn, of Chicago (Kimball R. Anderson and Lawrence R. Desideri, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Little City Foundation, appeals from an order of the circuit court of Cook County granting a motion for summary judgment by defendants, Capsonic Group, Inc. (Capsonic), and American Antenna Corporation (American). The sole issue on appeal is whether the trial court properly concluded that a valid *inter vivos* gift of stock was made.

We affirm.

Capsonic and American are corporations located in Elgin, Illinois. Both companies were founded by James Liautaud, chairman and majority shareholder. In 1964, Jeffrey Liautaud, James' brother, acquired 7,250 of the over 150,000 outstanding shares of stock in Capsonic. He later received 89.9 of the 10,000 shares in American as a dividend on the Capsonic stock.

In June 1984, James informed all shareholders of Capsonic and American, including Jeffrey, that Capsonic would like to buy out all of its outside shareholders. Capsonic offered to pay Jeffrey over $330,000 for his shares in the corporations. Jeffrey found the offer unacceptable and refused to discuss the offer with James. This led to animosity between the brothers.

Jeffrey testified during his deposition that in November 1984 he decided it was more important for the "good of the family" that he dispose of his stock. Jeffrey stated that he was "moving away from material things" and "felt that those who owned things ended up being owned by them." His goal was to devote full time to a religious

endeavor he originated in which he sought to uncover a "naturalistic value system." Jeffrey subsequently informed James that he had dedicated his life to God and that he was "setting up his life to own nothing."

Jeffrey knew his brother wanted the Capsonic and American stock and called James' office on November 29, 1984. Jeffrey learned from James' secretary that James was out of town, but would be returning that morning on a flight into O'Hare Airport. Jeffrey went to the airport and physically delivered the fully endorsed stock to James in order to end the strife between them. The brothers sat down to talk, but they now disagree on the content of the conversation.

Jeffrey testified that he delivered the stock with the intention of selling it to James. He further testified that he wanted "to put the ball in [James'] court, and let [James] decide the price and terms." Jeffrey also stated that the word "sell" was never used and that no sale terms were discussed at the airport. Jeffrey further testified that he and his wife filed Federal gift tax returns showing a gift to James of Jeffrey's stock on November 29, 1984.

James testified during his deposition that Jeffrey told him he had taken a vow of poverty and that he was giving the stock to him as a gift. James stated that initially he rejected the gift, but, at Jeffrey's insistence, he accepted. After receiving the stock certificates, James gave the stock to Capsonic's chief financial officer and told her to cancel the certificates.

During January 1985, James attempted to send Jeffrey a check for the value of stock as a gift to Jeffrey's family on two separate occasions. Jeffrey returned the checks stating that James should treat the stock as a gift to the two corporations. James testified that because he had already personally accepted Jeffrey's stock as a gift at the airport and had the shares cancelled, he had rejected Jeffrey's new proposal that the gift be to the corporations.

In October 1985, James received a letter from Jeffrey's attorney contending that James had refused to accept his brother's gift of stock and requesting that he return the share certificates. Jeffrey testified that during this time he formed a charitable foundation, the Infant Prague Foundation, for the purpose of accepting a donation of the stock. On October 30, 1985, Jeffrey sent a letter to James offering the stock to James personally since James already refused to accept the stock on behalf of the corporations. Jeffrey's letter states, in pertinent part, as follows:

> "My first choice is to give [the stock] to the corporation, because I was for all the shareholders and against a forced take

out. My second choice is to give you the stock in the Christmas spirit.

If you were to accept my gift, for me it would be like the best Christmas present I have ever given. I am for you. I know how important it is for you to own your own companies completely yourself. I want that for you.

\*\*\*

I have not yet transferred the stock to the foundation. I offer it to you as a gift."

On November 6, 1985, James wrote Jeffrey a letter in which he stated, "your gift is accepted." James testified that he intended to personally accept any and all rights and interest in the stock as a gift. Jeffrey testified that he understood the letter to mean that James was accepting the stock on behalf of the corporation since he signed the letter as chairman of Capsonic.

On December 7, 1985, Jeffrey transferred his purported right, title and interest in the stock to the Infant Prague Foundation, which he controlled. Six months later, the Foundation transferred its purported right, title and interest in the stock to plaintiff.

The court granted defendants' motion for summary judgment, finding that there was no genuine issue of material fact as to whether Jeffrey made a valid gift to James in November 1985. This appeal followed.

Plaintiff contends the trial court erred in finding that no genuine issue of material fact exists as to whether Jeffrey made a valid gift to James in November of 1985 and that defendants' motion should have been denied as a matter of law.

A motion for summary judgment should be granted only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Hutchings v. Bauer* (1991), 212 Ill. App. 3d 172, 177.) The evidence must be construed strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) "[A]lthough the opponent of a summary judgment motion does not have to prove his case, he must present some facts that would arguably entitle him to judgment." *Lutz v. Goodlife Entertainment, Inc.* (1990), 208 Ill. App. 3d 565, 568.

■■ Next, we set forth the standard to determine whether a valid gift has been made. "A gift is a voluntary, gratuitous transfer of property by one to another where the donor manifests an intent to

make such a gift and absolutely and irrevocably delivers the property to the donee." (*In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 849.) In order to have a valid *inter vivos* gift, the donee must prove by clear and convincing evidence: (1) a present donative intent of the donor, (2) delivery of the gift to the donee, and (3) acceptance of the gift by the donee. (*In re Estate of Stahl* (1973), 13 Ill. App. 3d 680, 683, citing *Richardson v. Richardson* (1893), 148 Ill. 563, 569.) " 'Donative intent' is intention on the part of the donor that there be a present and irrevocable transfer of title to the subject matter of the gift; delivery of the subject matter of the gift is the means whereby the donative intent of the donor is given effect." (*Hall v. Country Casualty Insurance Co.* (1990), 204 Ill. App. 3d 765, 778, citing *Gordon v. Gordon* (1969), 113 Ill. App. 2d 191, 194.) "The question as to what constitutes a gift is one of law ***." (*Hall*, 204 Ill. App. 3d at 778.) "Where, however, the pleadings, depositions, and other evidence before the court show that at trial a verdict would have to be directed, entry of summary judgment is proper." *Hall*, 204 Ill. App. 3d at 778.

■ In the present case, we believe defendants proved by clear and convincing evidence that Jeffrey made a valid *inter vivos* gift to James in November 1985.

First, plaintiff contends that Jeffrey did not intend to make a gift when he delivered the stock certificates to James at O'Hare Airport in 1984. However, the issue at the hearing on the motion for summary judgment and on appeal is whether Jeffrey made a valid gift to James in November 1985. Plaintiff's argument virtually ignores Jeffrey's stated intent to make a gift to James when he offered the stock to him as a gift in his letter of October 30, 1985. We believe that the content of the letter clearly and unambiguously expresses Jeffrey's donative intent to offer the stock to James as a gift. We therefore find that the trial court did not err in finding that there was no genuine issue of fact as to whether Jeffrey intended to make a gift of his interest in the stock to James.

Plaintiff does not contest adequate delivery of the stock. The undisputed evidence is that Jeffrey delivered his fully endorsed stock certificates to James in November 1984, and that the certificates were already in James' possession when Jeffrey made his October 30, 1985, offer. Because James already had possession of the stock at the time of the gift, additional delivery at the time of the gift was unnecessary. See *Barnes v. Banks* (1906), 223 Ill. 352, 361.

Lastly, plaintiff contends that defendants failed to prove by clear and convincing evidence that James accepted Jeffrey's offer. After receiving Jeffrey's letter, James immediately responded by writing to

Jeffrey and stating, "your gift is accepted." In addition, James testified that he intended by his letter to personally accept as a gift any and all rights and interest in the stock. We believe this evidence clearly establishes that James accepted the stock in his personal capacity. We therefore affirm the trial court's finding that James accepted the gift.

Plaintiff argues that since James signed the letter as chairman of the corporation there was an inference that he was accepting the stock on behalf of the corporation and not in his personal capacity. Plaintiff failed to raise this novel contention in the trial court and it is therefore waived on appeal. *Boonstra v. City of Chicago* (1991), 214 Ill. App. 3d 379, 385.

We affirm the trial court's finding that no genuine issue of material fact exists as to whether Jeffrey made a valid gift to James in November of 1985, and that defendants' motion for summary judgment was proper as a matter of law.

For the foregoing reasons, we affirm the ruling of the circuit court.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.