**R.L. HUSZAGH, Plaintiff,**

**United States of America, Intervenor.**

v.

**Diane H. D'AMICO, etc., et al., Defendants.**

**Nos. 90 C 6787, 90 C 6788.**

United States District Court, N.D. Illinois, E.D.

March 3, 1994.

---

---

### *MEMORANDUM AND ORDER*

MORAN, Chief Judge.

This case originated in two actions filed in Illinois state court, *In the Matter of the Estate of Dorothea W. Huszagh,* 89 P 208 (Circuit Court, Lake County), and *R.L. Huszagh v. D'Amico et al.,* 89 MR 396 (Circuit Court, DuPage County). The government intervened in the above two actions and

the cases were removed to this court and consolidated. The government filed its complaints in intervention to reduce to judgment the unpaid individual income tax liabilities of Dorothea W. Huszagh for the 1984 tax year and to foreclose on certain tax liens against Mrs. Huszagh's property, including property transferred to R.L. Huszagh after the liens attached. Before this court now is the government's motion for summary judgment. For the reasons stated below, the motion is granted, except with respect to certain penalties.

### FACTS

Dorothea Huszagh was 88 years old in 1985, when her 1984 tax return was due. Because of her advanced age she did not maintain adequate records of her investments and income. She occasionally became confused and was very forgetful. On April 15, 1985, Mrs. Huszagh filed a Form 4868 requesting an extension of time to file her 1984 tax return. In July 1985, Mrs. Huszagh fell and broke several ribs, causing her great pain and making breathing difficult. Her son, Ralph Huszagh, tried to secure the documents necessary to prepare her return but was hindered by Mrs. Huszagh's age and physical condition. On August 15, 1985, she filed a Form 2688 requesting additional time to file. On September 16, 1985, Ralph Huszagh filed a second Form 2688 requesting additional time to file because of his mother's health problems and his difficulty in locating the records necessary to prepare a full return. On September 23, 1985, Ralph Huszagh filed a third Form 2688, stating that he had prepared a draft return but that his mother indicated that there were additional reports of interest and dividends that were not listed on the return. He also stated that his mother was ill and unable to properly assist in the preparation of the return. On September 30, 1985, Ralph Huszagh filed a return on behalf of his mother. On this return was a note which stated that the return was incomplete and that it would be amended once verification of additional income was received. Ralph Huszagh never followed up on amending the return and it was selected for audit by the Internal Revenue Service (IRS).

Dorothea Huszagh's return omitted substantial royalty and dividend income. On June 12, 1987, the IRS informed Mrs. Huszagh that its audit revealed that certain adjustments to her 1984 return were necessary and that her case would be processed, based on these findings, if she failed to respond within 30 days. Mrs. Huszagh did not respond to this letter. On February 16, 1988, the IRS issued a notice of deficiency letter which stated that Mrs. Huszagh owed an additional $104,052.00 in tax, plus substantial penalties. Mrs. Huszagh was given 90 days to file a petition with the Tax Court for a redetermination of the deficiency. She did not do so. On July 4, 1988, the IRS assessed an audit deficiency in the amount of $104,052.00 against Mrs. Huszagh. In addition, penalties were assessed as follows: $25,320.28 for negligence, $4,546.25 for delinquency, $26,013.00 for substantial understatement of taxes, and $8,164.38 in interest on the substantial understatement.

At the time of the determination of the deficiency and the issuance of the letters by the IRS, Dorothea Huszagh's health had begun to deteriorate to the point where she could no longer attend to her personal affairs. Soon thereafter, on April 13, 1989, a petition was brought in the Lake County Circuit Court for a determination that Dorothea Huszagh was a disabled person. The court found that Mrs. Huszagh was unable to care for her personal and financial affairs and appointed her daughter, Diane D'Amico, as her guardian. On July 12, 1991, D'Amico filed a request for abatement of penalties on behalf of Dorothea Huszagh with the Justice Department's Tax Division. The Tax Division has submitted the matter to this court for a determination.

From July 1988 to March 1989, Dorothea Huszagh transferred a number of oil and gas properties as gifts to three of her children: R.L. Huszagh, Richard Huszagh and Diane D'Amico. After she was appointed guardian, D'Amico returned to her mother's estate the properties transferred to her and brought an action in the Circuit Court of Lake County to, among other things, recover the properties transferred by her mother to R.L.

Huszagh and Richard Huszagh in the nine months prior to Dorothea Huszagh's adjudicated disability. On September 8, 1989, R.L. Huszagh filed a "Petition for Termination of Guardianship, Dismissal of Petition for Citation to Recover Property and to Quash Citation as to Property and Other Relief" (petition to terminate) in the Lake County proceedings, which have now been transferred to this court.

The government has moved for summary judgment on the grounds that (1) Dorothea Huszagh is indebted to the United States for her unpaid tax liabilities, including penalties and interest to date;[1] (2) it has priority in regard to the federal tax liens as against R.L. Huszagh, who was given certain oil and gas properties by Dorothea Huszagh after the date of the assessment; and (3) that it is entitled to foreclose its liens upon the oil and gas interests transferred to R.L. Huszagh, have those properties sold in a judicial sale, and receive the proceeds therefrom.

### DISCUSSION

■ In deciding a motion for summary judgment the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). The facts recited above reflect this standard. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990).

### I. *Dorothea Huszagh's Tax Liabilities*

#### A. *Validity of Taxes Assessed*

The IRS made an assessment against Dorothea Huszagh on July 4, 1988, finding that there was a deficiency in her 1984 return and imposing penalties and interest thereon. To demonstrate that valid assess-

ments were made against Huszagh, the government has submitted a certificate of assessments and payments, which identifies the taxpayer, her social security number, the assessment date, the amount of the deficiency, additions to tax and interest, and the tax period (1984). The certificate was signed by an IRS official who certified that according to IRS records it was a true and complete transcript for the period stated.

■ Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made. *United States v. Miller*, 318 F.2d 637, 639 (7th Cir.1963); *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir.1992); *United States v. Bowers*, 920 F.2d 220, 223–24 (4th Cir.1990); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir.), *cert. denied*, 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989); *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir.), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). Accordingly, through its production of the certificate of assessments and payments, the government has established presumptive proof of the validity of the assessment. Given that neither D'Amico nor R.L. Huszagh have presented any evidence to counter this presumption, and in fact do not contest the validity of the assessment of taxes, the court finds that the government has established that the claimed tax liability was properly assessed against Dorothea Huszagh.

#### B. *Penalties Assessed*

The penalties imposed, however, are a different matter. D'Amico and R.L. Huszagh contend that the penalties should be abated because there was reasonable cause for the inaccuracies on Dorothea Huszagh's 1984 tax return. The government, on the other hand, maintains that the reasonable cause exception to the imposition of penalties does not apply in cases such as this where the taxpayer relied on an agent to file her return. However, before examining the propriety of

---

1. The United States has listed the amount of Dorothea Huszagh's indebtedness as $153,- 483.68, plus interest and additions thereto, as allowed by law.

the penalties the court must determine whether jurisdiction is proper.

### 1. *Jurisdiction*

Ordinarily a taxpayer who wishes to contest the validity of a deficiency or penalty before paying the amount requested must petition the Tax Court for relief. The taxpayer has 90 days from the issuance of the notice of deficiency to file his petition. The Tax Court cannot consider the case if the taxpayer fails to petition within this time frame. Where a taxpayer pays first and contests later, Section 1346(a)(1) of Title 28 of the United States Code provides that

> [t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....

Thus, for a taxpayer to bring suit to challenge an assessment or penalty in district court he must first pay the disputed amount. ■ This case, however, is before this court under a different procedural posture. The United States intervened in two ongoing state court actions and removed the cases to federal district court. This is not a case where the taxpayer has attempted to hale the government into federal court to challenge the validity of an assessment or penalty, without first paying the amount requested. *See e.g., Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *Curry v. United States,* 774 F.2d 852 (7th Cir.1985). Rather, the United States brought the taxpayer into federal court—the government is here as plaintiff-intervenor, not as defendant. Moreover, it is seeking to foreclose on certain properties to recover the amount assessed, plus penalties and interest. Because this case has already been properly

removed to this court we can decide whether the penalties were correctly imposed. In *United States v. Isaac,* 1991 WL 138321 (E.D.Ky.1991), *aff'd,* 968 F.2d 1216 (6th Cir. 1992), the United States sought to recover unpaid taxes and penalties in a Kentucky federal district court. The court exercised jurisdiction over the claim, finding that the taxpayer's illness constituted reasonable cause for his late filing and, therefore, the penalties were improperly assessed. In this case, just as in *United States v. Isaac,* the United States has brought suit to recover unpaid taxes and penalties. This court has jurisdiction to determine the propriety of the penalties.

### 2. *Validity of Penalties Imposed*

The Internal Revenue Code (the Code) provides for a number of penalties to be imposed in the event that a taxpayer fails to meet his or her obligations under the Code.[2] For the purposes of this motion, the government does not dispute Huszagh's version of the facts regarding the filing. However, the government maintains that, under these facts, the penalties were properly imposed. Conversely, D'Amico, in her capacity as guardian, challenges the validity of penalties assessed against Dorothea Huszagh under sections 6651(a), 6653(a)(1), 6653(a)(2) and 6661(a) of the Code.

Section 6651(a) imposes penalties on taxpayers who fail to file their returns in a timely fashion, unless the taxpayer can demonstrate that the late filing was due to reasonable cause and not willful neglect. An IRS regulation provides that

> [a] failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship ... if he paid on the due date.

26 C.F.R. § 301.6651–1(c)(1).

The Supreme Court has interpreted § 6651 as placing a "heavy burden" on the

---

**2.** Unless otherwise indicated, any sections of the Code referenced in this opinion are from the Internal Revenue Code of 1954 (now superseded), which was in effect in 1984—the tax year at issue in this case.

taxpayer, who must prove *both* "(1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 690, 83 L.Ed.2d 622 (1985). The Court stated that "disability alone could well be an acceptable excuse for a late filing." *Id.* at 248 n. 6, 105 S.Ct. at 691 n. 6. In his concurrence, Justice Brennan argued that the "ordinary business care and prudence" standard should only be applicable to the "ordinary person," *i.e.,* "one who is physically and mentally capable of knowing, remembering, and complying with a filing deadline." *Id.* at 253, 105 S.Ct. at 693. He stressed that when a taxpayer is *unable* to exercise ordinary business care and prudence for reasons of incompetence or infirmity, "there might well be no good reason for imposing the harsh penalty of § 6651(a)(1) over and above the prescribed statutory interest penalty." *Id.* Justice Brennan further stated:

> Congress has emphasized ... that exemptions *must* be made where a taxpayer demonstrates 'reasonable cause.' Accordingly, the IRS already allows dispensations where, for example, a taxpayer or a member of his family has been seriously ill, the taxpayer has been unavoidably absent, or the taxpayers' records have been destroyed.... Thus a substantial argument can be made that the draconian penalty provision should not apply where a taxpayer convincingly demonstrates that, for whatever reason, he reasonably was unable to exercise ordinary business care.

*Id.* at 254, 105 S.Ct. at 694 (emphasis in original).

The government does not allege that the tardiness of or inaccuracies in Dorothea Huszagh's return were the result of willful neglect. Rather, it attempts to characterize Dorothea Huszagh's situation as one where a taxpayer simply relied on an agent to her detriment, and argues that, under *Boyle,* such reliance is not reasonable cause. *Boyle* held that "the failure to make a timely tax return is not excused by the taxpayer's reliance on an agent and such reliance is not 'reasonable cause.'" *Boyle,* 469 U.S. at 252, 105 S.Ct. at 693. However, the case at hand presents the very question expressly left open in *Boyle*—whether penalties are appropriate when a taxpayer is unable to meet the filing requirements because of infirmity or disability.

D'Amico argues that her mother should not be held to the same standard as a healthy young adult. She maintains that, given her mother's advanced age, forgetful nature and poor health, she acted reasonably in enlisting her son to complete her return. D'Amico contends that her mother's failing mental and physical faculties made it impossible for her to file the return herself and greatly impeded her son's ability to file the return accurately or on time. Accordingly, she asks that the court find that Mrs. Huszagh exercised ordinary business care and prudence for a person of her age and condition, and abate all applicable penalties.

This court will not enter summary judgment on the penalties imposed under § 6651. If Huszagh can establish the facts alleged herein, reasonable cause could be found to exist for Huszagh's late filing. The fact that her son prepared the return would not alter the fact that she was unable to prepare the return herself or even to assist her son in locating the records he needed to file an accurate return. This case is different from the usual case where a taxpayer relies on an agent to file a return. If the facts are as alleged, both Huszagh and her son attempted to comply with the filing requirements but her failing health made compliance extremely difficult. Her illness and the fact that the return was incomplete were disclosed to the IRS. Under these circumstances, reasonable cause could be said to exist.

The § 6661 substantial understatement penalty can also be waived upon a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. 26 U.S.C. § 6661(c). The most important factor to be considered in determining whether the penalty should be waived is the extent of the taxpayer's effort to assess his or her proper tax liability under the law. 26 C.F.R. § 1.6661–6(b). While none of the examples listed in the regulation are comparable to this case, as explained above, the court be-

lieves that there may have been reasonable cause for Dorothea Huszagh's understatement of income. Should she establish the facts alleged herein, this court would likely conclude that there was reasonable cause and that she acted in good faith. Summary judgment is not appropriate on the substantial underpayment penalty.

Negligence penalties were also imposed on Mrs. Huszagh, pursuant to 26 U.S.C. §§ 6653(a)(1) and 6653(a)(2). D'Amico asks the court to waive these penalties because of the condition her mother was in when her 1984 return was due. Section 6653(a)(1) provides:

> If any part of any underpayment ... is due to negligence or intentional disregard of rules or regulations (but without intent to defraud) there shall be added to the tax an amount equal to 5 percent of the underpayment.

Section 6653(a)(2) further provides for a penalty of 50 percent of the interest on the amount of underpayment.

■ Any addition to tax imposed by the Commissioner under § 6653 is presumptively correct and must stand unless the taxpayer can establish that he or she was not negligent. *Pfluger v. Commissioner,* 840 F.2d 1379, 1386 (7th Cir.), *cert. denied,* 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988). A taxpayer is negligent when he or she shows a lack of due care or fails to do what a reasonable and ordinarily prudent taxpayer would do under the circumstances. *Accardo v. Commissioner,* 942 F.2d 444, 452 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1266, 117 L.Ed.2d 494 (1992). D'Amico maintains that, under the circumstances, her mother did all that she could to comply with the filing requirements.

■ Summary judgment will not be entered on the negligence penalties. If the facts alleged herein are established, it would seem that Dorothea Huszagh was not negligent—she would have exercised due care under the circumstances by enlisting her son to complete the filing. Under the facts alleged by Huszagh, she did all that she was capable of, including filing for extensions of time and informing her son that a draft

return he had prepared failed to include all of her taxable income. She did not disregard the regulations, but was simply unable to comply with them because of her poor mental and physical health. She did what a reasonable and prudent taxpayer would have done under similar circumstances. She should have the opportunity to establish these facts.

## II. *Reducing to Judgment the Federal Tax Liens*

### A. *Liens on the Transferred Oil and Gas Properties*

■ Section 6321 of the Code provides for the imposition of a lien in favor of the United States upon "all property and rights to property, whether real or personal," belonging to a delinquent taxpayer. Such a lien arises at the time the assessment is made and remains in effect until the tax liability is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322. Federal tax liens are created and governed by federal law. *United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960). While state law controls in determining the nature of the interest the taxpayer had in the property, *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958), federal law governs the priority of competing interests in the taxpayer's property. *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960). In general, the long-established priority rule with respect to federal tax liens is "first in time is first in right." *United States v. City of New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). With respect to four classes of claimants, notice of a federal tax lien must be filed "first in time" for the United States to be "first in right." These four classes are: (1) purchasers; (2) holders of security interests; (3) mechanic's lienors; and (4) judgment lien creditors. 26 U.S.C. § 6323(a). The § 6323 filing requirement is irrelevant in this case, however, because the properties at issue were transferred as gifts.

■ The United States assessed an audit deficiency against Dorothea Huszagh on July

4, 1988; accordingly, the statutory liens attached to her property on that date.[3] The United States is seeking to foreclose its liens on certain oil and gas properties transferred by Dorothea Huszagh to R.L. Huszagh between July 1988 and March 1989.[4]

Section 7403 of the Code provides that a district court may enforce a tax lien through a foreclosure sale of the delinquent taxpayer's property. 26 U.S.C. § 7403. The properties transferred from August 1988 to February 1989 were subject to federal liens at the time they were transferred: "[t]he transfer of the property subject to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere....'" *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958) (citations omitted). Accordingly, the United States was first in time and has priority over the transferee, R.L. Huszagh. The United States is entitled to judgment on those liens, and to foreclose on those properties to satisfy the deficiencies assessed against Dorothea Huszagh.

There is a question, however, as to whether the mineral interests in the property in Winkler County, Texas, transferred to R.L. Huszagh in July of 1988, are subject to the federal liens. R.L. Huszagh contends that, despite the fact that it was executed on July 21, 1988, the transfer deed for the Winkler County mineral interests is not subject to the federal lien because it recites that it became effective July 1, 1988. Further, he contends that priorities under the liens should be governed by Texas law and that, under Texas law, he has first priority in the properties.[5]

 As discussed above, federal law governs the priority of competing interests in a delinquent taxpayer's property. Texas law,

on the other hand, will be decisive on the issue of whether Dorothea Huszagh or R.L. Huszagh held an interest in the Winkler property on July 4, 1988, the date the federal liens attached. Under Texas law an interest in oil and gas is an interest in real property. *Rogers v. Ricane Enterprises,* 772 S.W.2d 76 (Tex.1989); *Texas Co. v. Daugherty,* 107 Tex. 226, 176 S.W. 717 (1915). To be valid under the statute of frauds a conveyance of a real property interest must be by written instrument. Furthermore, a Texas statute requires that any conveyance of real property, as well as any mortgage or deed of trust, be recorded to be valid against creditors without notice. Tex.Prop.Code Ann. § 13.001 (West 1994). Texas courts have given a broad construction to the term "creditor," so that it includes the holders of unliquidated, unmatured contingent claims. *Zahra Spiritual Trust v. United States,* 910 F.2d 240, 248 (5th Cir.1990), citing *Burnett v. Chase Oil & Gas, Inc.,* 700 S.W.2d 737, 743 (Tex.Ct.App.1985). Texas law provides protection for creditors even if their claims are not yet ripe:

> "although the [creditor] cannot maintain an action until it is due, he nevertheless has an interest in the property as a fund out of which the demand ought to be paid.... A contingent claim is as fully protected as one that is absolute."

*Burnett,* 700 S.W.2d at 743.

 The transfer deed at issue here was executed on July 21, 1988, but stated that its effective date was July 1, 1988. However, federal law provides that even a claim that can relate back under state law cannot defeat a tax lien in favor of the United States. *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). Thus, regardless of whether the transfer would be valid as of

---

3. None of the parties dispute the fact that the assessment was made, that notice and demand was issued, or that a lien in favor of the United States arose on July 4, 1988.

4. The United States states that it seeks to foreclose on properties transferred by Dorothea Huszagh to R.L. Huszagh from July 1988 through March 1989. However, the transfer deeds attached to the United States' motion for summary judgment (Exh. 4–20) show February 1989 as the latest date of a transfer to R.L.

Huszagh. (See Exh. 14). As the United States is seeking to foreclose only on the properties transferred to R.L. Huszagh, the court assumes that the applicable time frame is from July 1988 to February 1989.

5. D'Amico, as guardian for Dorothea Huszagh, does not dispute the contention that the United States has priority over R.L. Huszagh with respect to the oil and gas properties, or that the United States is entitled to foreclose its liens upon these properties.

July 1, 1988 under Texas law, it cannot relate back to that date to defeat the federal lien. Moreover, the transfer deed was not executed until July 21, 1988, and therefore was not recorded on July 4, 1988, when the federal liens attached. As a creditor of Dorothea Huszagh, the government is protected by the Texas recording statute. Dorothea Huszagh had an interest in the Winkler County mineral rights when the federal liens attached. Because the government was first in time, its interest has priority over R.L. Huszagh. The government is entitled to reduce this lien to judgment and to foreclose on the lien pursuant to § 7403 of the Code.

### B. *The Lien in the Transferred Lasca Stock*

The government also seeks to reduce to judgment and foreclose on its tax lien in 208 shares of Lasca stock and dividends therefrom, which Dorothea Huszagh gave to R.L. Huszagh. R.L. Huszagh maintains that the stock is not subject to the lien because his mother gave it to him in 1985, three years before the liens attached. He further contends that the lien did not attach to the shares of Lasca because, under § 6323(b)(1), federal liens do not attach to securities. Huszagh's arguments are without merit.

First, § 6323(b)(1) applies only to purchasers and holders of security interests in the securities at issue who did not have notice of the existence of the federal lien. Huszagh admits that his mother gave him the shares of Lasca. As neither purchaser nor holder of a security interest in the stock, he cannot use § 6323 to defeat the validity of the federal lien.

[18–20] Next, the court finds that the gift of the stock was not effective until 1989, when the shares were transferred on the books of the company. A "gift" is a voluntary, gratuitous transfer of property by one to another, where the donor manifests an intent that there be a present and irrevocable transfer of title of the subject matter of the gift, including relinquishment of all present and future dominion and control of the property. *In re: Estate of Kelly,* 240 Ill. App.3d 564, 181 Ill.Dec. 350, 353–53, 608 N.E.2d 423, 426–26 (1992); *Little City Foun-*

dation v. Capsonic Group, Inc., 231 Ill. App.3d 122, 172 Ill.Dec. 867, 869, 596 N.E.2d 146, 148 (1992). A further requirement is that the donor absolutely and irrevocably deliver the property to the donee. *Id.*

In his affidavit, R.L. Huszagh states that his mother gave him the stock certificate for the shares of Lasca sometime in 1985. He alleges that he put the stock certificate in his safety deposit box and then both he and his mother forgot that she had given him the certificate. He maintains that in April or May 1988, his mother told him that she no longer needed the proceeds from the Lasca stock and asked that he see to it that the dividends came to him. He did not do so until February 1989, when, having forgotten that the stock certificate was in his safety deposit box, he and his mother executed an affidavit of lost or stolen certificate and transferred the shares on Lasca's books.

Under these facts, Dorothea Huszagh did not give the Lasca stock to R.L. Huszagh until February 1989, when the shares were transferred on the company's books. It is clear that Dorothea Huszagh did not relinquish absolute dominion and control over the stock until that date. She continued to receive the dividends and to include the property in her filings with the IRS. Even if she told R.L. Huszagh that she wanted him to begin receiving the dividends in April or May 1988, he did not actually begin to do so until 1989, when the shares were transferred to his name. Accordingly, until Dorothea Huszagh executed the affidavit of lost or stolen certificate, she did not absolutely and irrevocably transfer the gift to R.L. Huszagh. Because the federal tax liens attached to Dorothea Huszagh's property on July 4, 1988, the Lasca stock was subject to the liens when it was transferred to R.L. Huszagh. Thus, the government is entitled to judgment on this lien and, pursuant to § 7403 of the Code, may foreclose upon it.

### CONCLUSION

The government's motion for summary judgment is granted, except with respect to the penalties assessed under sections 6651(a), 6653(a)(1), 6653(a)(2) and 6661(a) of the Code.

The government is entitled to the balance due on the tax deficiency plus statutory interest. The properties which were transferred subject to the federal liens are to be sold and the proceeds to be applied to satisfy Dorothea Huszagh's tax deficiency. The remainder, if any, shall be returned to the transferees.

A status hearing is set for March 23, 1994 at 9:45 a.m. The government should bring its calculations and documentation for the balance due on Dorothea Huszagh's tax deficiency, including interest.

The remaining claims, other than for penalties, are remanded to the state court, pursuant to 28 U.S.C. § 1441(c), as they involve only matters of state law.