BERTON T. and MAUREEN E. SCHAEFFER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Schaeffer v. Commissioner
Docket Nos. 4280-91, 16258-91
United States Tax Court
T.C. Memo 1994-227; 1994 Tax Ct. Memo LEXIS 228; 67 T.C.M. (CCH) 2989; May 23, 1994, Filed *228 For petitioners: Michael J. Hill. For respondent: Dawn Marie Krause. PARKER
PARKER
MEMORANDUM OPINION PARKER, Judge: Respondent determined deficiencies in, and additions to, petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
[1]Sec. 6653(a)(1) [2]Sec. 6653(a)(2) Sec. 6661
1984
$ -0- $ 662  50% of interest  $ 3,310
on $ 13,240  1985
7,834
392
50% of interest  1,959
on $ 7,834  1986
26,460
1,323
50% of interest  6,615
on $ 26,460  1987
5,210
261
50% of interest  1,303
on 5,210  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years before the Court, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues remaining for decision [1] are as follows: (1) Whether petitioner Berton T. Schaeffer and petitioner Maureen E. Schaeffer (collectively referred to as petitioners) are entitled to additional Schedule C deductions in excess of those allowed by respondent for the taxable year 1985; (2) Whether *229 petitioners are entitled to additional Schedule A miscellaneous itemized deductions in excess of those allowed by respondent for the taxable year 1985 and whether certain other adjustments should be made to Schedule A; (3) Whether petitioners are entitled to additional Schedule E deductions in excess of those allowed by respondent for taxable year 1985; specifically, whether expenses for three leased automobiles are allowed to the extent of income, whether a full interest deduction is allowed for property located at 1305 W. 105th Street, whether the Schedule E depreciation deduction should be reduced by $ 12,132, and whether business entertainment deductions related to all of the rental properties are allowed; (4) Whether petitioner Maureen Schaeffer's 1985 IRA deduction of $ 2,000 should be disallowed; (5) Whether petitioner Berton T. Schaeffer is entitled to a "Keogh Retirement Plan" deduction in the amount of $ 320 for 1985; (6) Whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2) for taxable years 1984 and 1985; and (7) Whether petitioners are liable for additions to tax for substantial *230 understatement of income tax under section 6661(a) for taxable years 1984 and 1985. With regard to the taxable years 1986 and 1987, the only issue presented by petitioners was whether the notice of deficiency was arbitrary and lacking in rational foundation, so as to vitiate the presumption of correctness and to shift the burden of proof to respondent. As to the following issues raised by the notice of deficiency, petitioners did not present any evidence during the administrative proceedings or at trial nor address them on brief: (1) Whether petitioner Berton T. Schaeffer's 1986 W-2 wages should be reduced by $ 2,400; (2) Whether petitioners' dividend income should be increased by $ 451 for 1986 and by $ 120 for 1987; (3) Whether petitioners are required to include a $ 548 State tax refund in their 1986 income; (4) Whether petitioners' *231 Schedule C expenses should be reduced by $ 13,405 in 1986 and by $ 2,642 in 1987; (5) Whether petitioners received $ 28,853 in capital gain income in 1986; (6) Whether petitioner Maureen Schaeffer received an $ 11,080 taxable distribution from an Individual Retirement Account (IRA) in 1987; (7) Whether petitioners' Schedule E expenses should be reduced by $ 23,128 in 1986 and by $ 21,759 in 1987; (8) Whether petitioners' 1986 and 1987 Schedule E depreciation deductions should be reduced by $ 11,676 and $ 5,882, respectively; (9) Whether petitioner Maureen Schaeffer's 1986 IRA deduction of $ 2,000 should be disallowed; (10) Whether the following adjustments (increases (decreases) in income) should be made to Schedule A of petitioners' 1986 and 1987 income tax returns: 1986
1987
Interest expense
($ 1,213)
$ 1,789)
Real estate taxes
(478)
(480)
Charitable contributions
3,862 2,213 Miscellaneous deductions
15,059 18,542 Casualty loss
499 -0-  (11) Whether petitioners are entitled to an investment tax credit carryover to 1986 in the amount of $ 12,001; (12) Whether petitioners' 1987 tax liability should be increased by $ 1,108 for a premature IRA distribution; *232 (13) Whether petitioner Berton T. Schaeffer is liable for self-employment tax of $ 123 for 1987; (14) Whether petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1)(A) and (B) for 1986 and 1987; and (15) Whether petitioners are liable for additions to tax for substantial understatement of income tax under section 6661(a) for 1986 and 1987. For convenience, each taxable year or group of years will be discussed under a separate heading, and our findings of fact and opinion under each heading will be combined. General Background
After long and convoluted pretrial proceedings in this case, none of the facts have been stipulated. The record consists of the testimony of petitioner Berton T. Schaeffer and Michael Pataky, a revenue agent of the Internal Revenue Service (IRS), and various exhibits offered and received into evidence at trial. At the time the petition was filed, petitioners maintained separate legal residences. Petitioner Berton T. Schaeffer (petitioner) resided in Effingham, Illinois, and petitioner Maureen E. Schaeffer (Mrs. Schaeffer) resided in Lakewood, Ohio. Petitioner is a medical *233 doctor specializing in pathology. He attended college and medical school at Georgetown University in Washington, D.C. Petitioners' joint Federal income tax returns for the taxable years 1981, 1982, and 1983 were previously examined by the IRS in office audits, and all issues regarding those years were resolved administratively. For the taxable year 1981, an overpayment of tax of $ 106.69 was found; for 1982, after numerous adjustments, a $ 2,440.71 increase in income was determined but no additional tax was due after numerous corrections in calculations; and for 1983, a no change letter was issued. Petitioners' tax returns for subsequent years were chosen for field audit. Petitioners were contacted in 1987 by Michael Pataky (Pataky), an IRS revenue agent. Petitioners provided Pataky with the documents requested for 1984. In June of 1988 petitioners received an examination report for the taxable year 1984, dated June 6, 1988. Petitioners did not agree with the report and on July 1, 1988, retained Michael J. Hill (Hill) as counsel to represent them. Pataky prepared a further examination report for the taxable year 1984, dated October 5, 1988. Apparently an appeal was taken *234 to an IRS appeals officer. Pataky prepared a third examination report for the taxable year 1984, dated August 10, 1989, which, as will be discussed below, apparently reflects the basis on which the 1984 tax deficiency was ultimately agreed upon. Both prior to and after retaining Hill, petitioner believed that he was entitled to control the course of an IRS audit by refusing to provide records for a subsequent year until the audit of the prior year had been concluded. The record does not show whether Hill counseled petitioner to continue to pursue that course of action or tried to dissuade him from that course of action. In any event, during the audit of petitioners' 1984 taxable year, the IRS bypassed the power of attorney given to Hill, and Pataky contacted petitioner directly. The decision to bypass the power of attorney was the result of numerous delays, lack of cooperation, and failure to submit any documents for 1985. Petitioners eventually did submit documents for 1985; however, they refused to provide any documents relating to 1986 or 1987 until the audit of the 1985 taxable year was resolved or, as will be discussed below, until a United States District Court enforced *235 certain administrative summonses. The Court is unaware of, and petitioners have not cited, any legal authority that allows them to control the course of an audit or to withhold documents for a later year until respondent has concluded the audit of an earlier tax year. 1984 Taxable Year
Petitioners filed a joint Federal income tax return for the taxable year 1984. Petitioner reported W-2 wage income of $ 86,473 as a doctor. On Schedule C of that return, petitioner claimed gross receipts from a medical practice in his home of $ 17,392.39 and deductions of $ 23,154.19. Respondent increased gross receipts by $ 2,797 and disallowed deductions in the amount of $ 12,589. On Schedule E, petitioners claimed a net rental loss of $ 29,089.36. Respondent disallowed all of this claimed loss, determined net rental income of $ 5,557, and thus increased taxable income by $ 34,646 (rounded). Petitioners reported taxable income of $ 49,717 on their 1984 return. Respondent made adjustments increasing total taxable income by $ 52,861. After allowing certain credits, respondent determined a total tax liability of $ 22,146 and a deficiency of $ 13,240. Petitioners have conceded these adjustments *236 and the deficiency for the taxable year 1984. See supra note 1. They are contesting the additions to tax for negligence and for substantial understatement of income tax as determined by respondent in the notice of deficiency. For reasons to be discussed below under the heading of additions to tax, we sustain respondent's determination of additions to tax for the taxable year 1984. 1985 Taxable Year
Petitioners filed a joint Federal income tax return for the taxable year 1985. Petitioner reported W-2 wage income of $ 96,907 (rounded) as a doctor. Petitioners reported taxable income on the 1985 return of $ -0-. 1. Schedule C Deductions
Petitioner claimed a business loss in the amount of $ 6,177 on Schedule C of the 1985 return. Petitioner's Schedule C loss deduction is based on medical services that he performed in his home. During 1985, petitioner operated a sole proprietorship for the practice of medicine and maintained an office in his home. This medical practice in the home was separate from his practice as a member of a pathology partnership, which was presumably the source of his reported W-2 wage income in 1984 and most of 1985. In 1980, petitioner had *237 been approached by an insurance company representative who inquired as to whether he would perform medical examinations for the company. Petitioner agreed. He examined these patients in his home or traveled to their homes for the examinations. Petitioner also began to perform other medical services in his home. He used a microscope to review and interpret cytological and histological slides and Pap smears for physicians specializing in obstetrics and gynecology. He consulted on pathology and hematology cases as well. Petitioner set aside one room in his home to serve as an office. The room measured approximately 11 feet by 14 feet and contained a desk, two chairs, bookcases, file cases, an EKG machine, and a typewriter. Patients and other associates would gain access to the office through the back door, which led to the driveway where there was sufficient parking for two or three automobiles. This home office constituted 9.09 percent of the total area of petitioners' house. Petitioner used this office for work related either to his medical activities or to his rental real estate activities. There was no personal use of the room. On Schedule C of the 1985 tax return, petitioner *238 indicated that his principal business or profession was "medicine". He reported $ 4,738.33 in gross receipts and $ 2,550 as cost of operations ($ 2,400 paid to a part-time nurse/receptionist and $ 150 for soap, towels, lab coats, cleaning gear, etc.). In addition, he deducted $ 8,365.40 as business expense. Specifically, petitioner deducted the following expenses: car expenses
$ 2,841.89
[2]depreciation 419.82
dues, publications
304.90
mgt fees
482.68
insurance
83.52
laundry, cleaning
114.53
mortgage interest
707.62
repairs
442.95
supplies
567.05
taxes
176.28
utilities, telephone
727.77
postage
156.18
appeal to pprd expen.
2.75
misc. services
69.90
car wash
54.00
glasses
79.88
replacement expense
for bus. car 1,133.68
$ 8,365.40
*239 In July of 1987, Pataky visited petitioner's home office. At that time, the office contained a desk, two chairs, and one lamp, but did not contain a window fan. Pataky also did not observe any teak chairs or venetian blinds as claimed by petitioner. [3] The office was not large enough to conduct patient examinations, and petitioner never told Pataky that he examined patients in another room of the house or that he traveled to patients' homes to make the physical examinations for the insurance company. (a) Home Office Deduction
Respondent determined that petitioner did not substantiate that he used any part of his home for business purposes as required by section 280A. In the statutory notice of deficiency, respondent disallowed $ 10,591 of the $ 10,915 of the total expenses (cost of operations plus itemized deductions) claimed *240 on the Schedule C "since it has not been established that these amounts were paid or incurred, or if paid or incurred, that they constitute ordinary and necessary business expenses within the meaning of I.R.C. section 162." In the notice of deficiency, respondent listed the Schedule C deductions allowed for 1985 as follows: Office supplies
$ 40.64
Secretarial services
50.00
Telephone
234.21
Total
$ 324.85
Section 162(a) allows a deduction for all of the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Under section 262, however, no portion of the expenditures attributable to personal, living, or family expense may be deducted. Furthermore, section 280A narrows the general deductibility rule of section 162 when deductions are claimed for the expenses of an office in the home. Section 280A denies deductions with respect to the use of a dwelling unit used by the taxpayer as a residence during the taxable year. Section 280A(c), however, permits the deduction of expenses allocable to a portion of the dwelling unit that is used exclusively and on a regular basis as "the principal place of business" for any trade *241 or business of the taxpayer. Sec. 280A(c)(1)(A). Petitioner has shown to our satisfaction that for the taxable year 1985 his home office was the principal place of business, within the meaning of section 280A, for the medical practice he conducted as a sole proprietorship. Commissioner v. Soliman, 506 U.S.    , 113 S. Ct. 701 (1993). Based upon the evidence presented, we find that petitioner is entitled to the following deductions, in addition to those allowed by respondent, in relation to his home office: $ 419.82   Mortgage interest
707.62
Taxes
176.28
Roof repairs
24.09
Office chair repairs
92.66
Supplies (picture
frames, light bulbs) 266.96
[4]Window fan 79.95
Total
$ 1,767.38
*242 Petitioner methodically retained receipts for his expenditures. On certain receipts, petitioner specifically wrote "office expense" and circled the relevant amount and date. However, on other receipts, no such notations were made. Thus, we have allowed deductions for those expenses that petitioner substantiated by testifying and presenting detailed receipts on which there are contemporaneous indications of the amount paid, the date of purchase, and the business purpose of the purchase. We have not allowed deductions for items that constitute personal expense and/or unsubstantiated expenditures. (b) Business Use of Automobile
Petitioner also claimed automobile expenses in connection with his Schedule C business. Under section 162, a taxpayer may deduct the cost of operating a passenger vehicle to the extent that it is used in the taxpayer's trade or business. Section 274(d) provides that no deduction under section 162 will be allowed unless the taxpayer complies with certain substantiation requirements. Section 1.274-5, Income Tax Regs., prescribes the rules for substantiation. Generally, a taxpayer must substantiate, by adequate records or sufficient evidence corroborating *243 his own statement, the amount, time, place, and business purpose of his expenditures. Sec. 1.274-5(b) and (c), Income Tax Regs. A record of these elements of an expenditure (e.g., an account book or diary) must have been made at or near the time of the expenditure and must be supported by sufficient documentary evidence (e.g., receipts or paid bills) to constitute substantiation of an expenditure. [5]Sec. 1.274-5(c), Income Tax Regs.
*244 However, prior to 1984 and also specifically for the taxable year 1985, the substantiation requirements of section 274(d) did not apply to local business travel (i.e., travel not away from home) expenses. [6]Miller v. Commissioner, T.C. Memo. 1982-491. Under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), this Court may approximate the amount incurred for local business travel. However, petitioners must present evidence from which we can reasonably estimate the amount of miles driven for local business purposes. *245 Petitioner alluded to American Express diaries that he kept during 1985 in which he scheduled his business appointments, but he did not produce or offer these diaries into evidence at trial. The only evidence petitioner offered to substantiate his mileage for 1985 was a notecard on which he had recorded his automobile's mileage on January 1, 1985, and on December 31, 1985. Although the notecard is evidence of the total mileage for all uses of the automobile in 1985, it provides no evidence as to the business use of the vehicle. Petitioner testified at trial that he did not have any other documentation regarding his automobile mileage because he thought this was all he needed. He stated that 40 percent is what "I'm supposed to use" for computing business use of the automobile. Although petitioner may in fact have used his automobile for business purposes in 1985, neither petitioner's unsubstantiated testimony nor the notecard provides a basis from which we can reasonably estimate the expenses incurred for local business travel. However, we are satisfied that petitioner had some business mileage in 1985 in connection with his physical examinations conducted in patients' homes *246 for the insurance company. Relying on the Cohan rule, but bearing heavily against petitioner for the inexactitude that is of his own making, we find that petitioner had 1,000 business miles that year. Cohan v. Commissioner, supra.
2. Schedule A Deductions
In November of 1985, petitioner dissolved his partnership with certain other pathologists and became employed at St. John's Hospital in Cleveland, Ohio, as a physician advisor. His duties as a physician advisor included acting as a liaison between the medical staff and the hospital administration and advising physicians on meeting Federal Medicare guidelines. Petitioner was a salaried employee of the hospital and did not receive a commission. Petitioners claimed the following miscellaneous itemized deductions on Schedule A, and respondent allowed substantiated expenses as follows: Per Return
Amount Allowed
Union and professional dues,
licenses, malpractice  $ 4,659.50 $ 3,480.50
Tax return preparation expense
116.92
-0- Legal fees
775.00
-0- Business entertainment --
professional associates  1,081.81
742.86
Education courses - fees, etc.
7,101.53
3,038.12
Professional books & journals,
photo supplies  947.33
942.21
Academy of Medicine photo
150.00
68.35
US Air Force Reserve Insignia
152.02
-0- Subscription of Mortality &
Morbidity Weekly Review  -0- 69.00
TOTAL
$ 14,984.11
$ 8,341.04
*247 Petitioner disputes respondent's partial disallowances of deductions for business entertainment and education courses, including travel to and from the courses. (a) Business Entertainment Expense Deduction
Section 1.274-2(a)(1), Income Tax Regs., specifically disallows deductions for entertainment expenses unless a taxpayer establishes that the expenditure was directly related to or associated with the active conduct of a trade or business. Section 1.274-2(f)(2), Income Tax Regs., provides exceptions to the general disallowance rule: (i) Business meals and similar expenditures -- (a) In general. Any expenditure for food or beverages furnished to an individual under circumstances of a type generally considered conductive to business discussion (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity, and the relationship to such trade, business or activity of the persons to whom the food or beverages are furnished) is not subject to the limitations on allowability of deductions provided for in paragraphs (a) through (e) of this section. There is no requirement that business actually be discussed for *248 this exception to apply.
However, the business meals exception provides that the surroundings in which the business entertainment occurs "must be such as would provide an atmosphere where there are no substantial distractions to discussion." Sec. 1.274-2(f)(2)(i)(b), Income Tax Regs. The exception will not apply "where there are major distractions not conducive to business discussion, such as at night clubs, sporting events, large cocktail parties, sizeable social gatherings or other major distracting influences." Id.
Furthermore, a taxpayer must meet certain substantiation requirements in order for a deduction to be allowed. The taxpayer must prove certain elements of the expenditure: the amount of the entertainment expenditure, the date and place of entertainment, the business purpose, and the business relationship between the taxpayer and the persons entertained. Sec. 1.274-5(b)(3), Income Tax Regs.
Section 1.274-3(a), Income Tax Regs., disallows deductions for gifts made directly or indirectly by a taxpayer to any individual during the taxable year in excess of $ 25. A taxpayer must prove the cost of the gift, the date of the gift, a description of the gift, the *249 business relationship between the taxpayer and the recipient of the gift, and the business reason for the gift or nature of business benefit derived or expected to be derived as a result of the gift. Sec. 1.274-5(b)(5), Income Tax Regs.
Petitioner presented testimony and receipts for drinks that he purchased for colleagues and coworkers after work or at medical staff dinner/dances at country clubs. He made notes to himself whenever he contributed $ 10 to a pool for a retirement gift or holiday gift for a coworker. [7] Petitioner testified that he thought these expenditures were all business related and were deductible. Respondent has allowed deductions for such items in the amount of each receipt presented, up to $ 25. We think that respondent was generous in allowing these deductions since many of the expenditures petitioner described *250 at trial were personal in nature. The situations described by petitioner were routine social "happy hour" gatherings or meals often shared by colleagues and coworkers at the end of a work day, not business meetings or discussions directly related to or associated with the active conduct of his position as a physician advisor at St. John's Hospital. We think respondent was generous in the allowance of many of the deductions for business entertainment expenses, and we hold that petitioners are not entitled to any further deductions in excess of those deductions allowed by respondent. (b) Education Courses and Travel
On Schedule A, petitioners deducted $ 7,101.53 for education courses and related expenses. Respondent allowed $ 3,038.12 of that amount. Petitioner contends that he is entitled to travel and education expenses in addition to those allowed by respondent. Petitioner provided evidence of two trips that were disallowed by respondent. The first trip was a 2-day trip to Washington, D.C., in October of 1985. Petitioner spent the first day attending a medical seminar and the second day taking the board certification examination in quality assurance and utilization review. *251 Generally, travel expenses connected with the attendance by a professional at a convention or professional meeting are deductible. Coughlin v. Commissioner, 203 F.2d 307 (2d Cir. 1953); Coffey v. Commissioner, 21 B.T.A. 1242, 1244 (1931). In addition, educational expenses are deductible "when the education maintains or improves the skills required by an individual in his or her employment or other trade or business". Leamy v. Commissioner, 85 T.C. 798, 809-810 (1985); sec. 1.162-5(a), Income Tax Regs. Petitioner has adequately shown the purpose of this trip and has substantiated the expenses incurred. Therefore, we hold that the expenses related to this trip, [8] totaling $ 740, are deductible on Schedule A. The second trip, in November of 1985, involved traveling to Chicago, Illinois, to attend a presentation on antibiotics and to *252 consider purchasing laboratory equipment for the hospital's pathology laboratory. The presentation was made by a company that had devised a new machine for more rapidly processing bacteriological cultures and testing organisms' sensitivities to various drugs. After the first day of the 2-day meeting, petitioner and his colleague, Dr. Hinman, St. John's Hospital chief of surgery, who accompanied petitioner on the trip, discovered that the equipment in which they were interested was not suitable. They therefore returned home on the same day as they had arrived. We find that this trip was undertaken by petitioner in his capacity as a physician advisor and was of benefit to St. John's Hospital. Petitioner was in charge of advising on purchases of this type of equipment. This trip falls within the scope and duties of petitioner's employment. However, when an employee has a right to reimbursement for expenditures related to his statutes as an employee but fails to claim such reimbursement, a deduction for the employee's expenses is not allowed because the employee's expenditures are not "necessary". Heidt v. Commissioner, 274 F.2d 25 (7th Cir. 1959), *253 affg. T.C. Memo. 1959-31; Lucas v. Commissioner, 79 T.C. 1, 7 (1982). The burden of establishing that the expense was not reimbursable by the employer rests with petitioner. Podems v. Commissioner, 24 T.C. 21, 23 (1955). Petitioner has not demonstrated that the expenses incurred were not reimbursable. We are not convinced that the hospital would not have reimbursed these expenses had petitioner sought reimbursement. The prohibition of deductions for reimbursable expenses is a clear rule and applies even when an employee is unaware that expenses are reimbursable. Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533. Therefore, we conclude that petitioner is not entitled to a deduction for the expenses of this trip. (c) Additional Adjustments to Schedule A
Respondent made the following additional adjustments to Schedule A: Item
1985
[9]Interest expense ($ 1,942)
Real estate taxes
(460)    Charitable contributions
835 Casualty loss
-0-  *254 Petitioners claimed $ 6,391.15 in charitable contributions on Schedule A. Respondent allowed a deduction for the amount substantiated by petitioners. Petitioners have presented no evidence substantiating the disallowed portion; therefore, we sustain respondent's partial disallowance of charitable contributions. Petitioners have not provided any evidence to respondent or this Court concerning their claimed casualty loss. Therefore, we sustain respondent's disallowance of this loss. 3. Schedule E Deductions
On Schedule E, petitioners claimed income and expenses and depreciation for six pieces of rental real estate and three automobiles. The income and expenses allowed for the real estate rental properties for 1985 are as follows: 3696
1308-10 10526 W. 117th Westlake
Clifton Advertising
$ 21    $ 17     $ 0     Interest
3,267 4,972 3,179 Taxes
743 991 711 Insurance
353 410 0 Utilities
92 296 0 Repairs
949 1,768 0 Condo Fee
0 0 433 Supplies
156 35 0 Easement
0 10 0 179 Deduction
0 488 0 Depreciation
1,538 1,909 2,183 Total Expenses
$ 7,199 $ 10,896 $ 6,506 Rent
$ 5,760 $ 7,740  $ 3,600 Gain (Loss)
($ 1,359)
($ 3,156) ($ 2,906)
*255 1305
12900 19000 W. 105th Lake
Lake
Advertising
$ 0    $ 0      $ 15     Interest
1,235
7,173 6,164 Taxes
460
1,196 1,323 Insurance
245
0 12 Utilities
0
0 10 Repairs
828
0 10 Condo Fee
0
2,777 1,439 Supplies
0
0 47 Easement
0
0 0 179 Deduction
0
383 0 Depreciation
1,932
6,935 5,167 Total Expenses
$ 4,700
$ 18,464 $ 14,177 Rent
$ 4,710
$ 8,724  $ 7,200  Gain (Loss)
$ 10   ($ 9,470) ($ 6,977) Respondent allowed a deduction for interest and depreciation as determined from third-party records and documentation provided in connection with the 1984 audit. Respondent allowed depreciation as previously verified for the rental real estate. (a) Rental Activities
During 1985, Mrs. Schaeffer owned and leased to tenants two parcels of real property located in Cleveland, Ohio, a duplex located at 1305 W. 105th Street (the duplex) and a dwelling located at 10526 Clifton Boulevard (the Clifton property). Mrs. Schaeffer had purchased the duplex from her parents, Walter and Mary Gogol, on February 1, 1981. By reason of her purchase of the duplex, Mrs. Schaeffer was indebted to her parents in the *256 original principal sum of $ 22,000. That obligation was payable in the monthly amount of $ 214.69, which represents an amortization of the principal sum over 12 years at an annual interest rate of 6 percent. During 1985, Mrs. Schaeffer's tenant in the Clifton property was her mother, Mary Gogol. The monthly rental charged to Mary Gogol was $ 300. Rather than exchanging money or checks for the full amounts of the $ 300 rent and the $ 214.69 payment due on Mrs. Schaeffer's $ 22,000 obligation, Mary Gogol simply paid the $ 85 difference to petitioners each month. Petitioners reported the full annual rental income of $ 3,600 on their 1985 return and claimed an interest deduction on Schedule E, relating to the $ 22,000 obligation. Respondent accepted this treatment. During 1985, Mrs. Schaeffer rented the bottom unit of the 1305 W. 105th Street duplex to Harold Blevins for $ 300 per month and rented the top unit to her father, Walter Gogol, for $ 85 per month. Respondent allowed only one-half of the depreciation for the duplex because the top unit was rented to Mrs. Schaeffer's father at below-market rent. Petitioners have conceded that they are not entitled to any deductions for *257 the leasing of the top unit of that property. But see supra note 9. (b) Claimed Business Entertainment for Rental Activities
Petitioners seek to deduct business entertainment expenses for rental real estate activities. Four receipts were offered into evidence, purportedly substantiating business entertainment expenditures related to petitioners' rental real estate activities. On two of the receipts, petitioner has noted "dinner with MES [petitioner-wife Maureen E. Schaeffer] to discuss real estate matters". No other names were indicated on those receipts. Another receipt only indicates "Allan dinner" on November 28, 1985, and the final receipt indicates that petitioner purchased two bottles of liquor on December 21, 1985, for a cocktail reception. Petitioners have not convinced this Court that these expenditures that they seek to deduct constitute the business entertainment expenses contemplated by section 274 and its regulations, rather than personal expenses. Therefore, we sustain respondent's disallowance of these expenditures. (c) Other Claims for Real Property Rental Expenses
In addition, petitioners claimed separate expenses relating to all of the rental *258 property activities (Items G, H, and I on Schedule E). Petitioners claimed $ 1,120 for expenses relating to all of the leasing activities (Item G), and respondent allowed deductions totaling $ 738. Petitioners claimed $ 1,426 in expenses for a van purportedly used 50 percent for real estate activity purposes. Respondent did not allow any expenses for the van claimed on Schedule E (Item H). Petitioners claimed $ 4,252.64 (expenses and depreciation) for a truck purportedly used only for real estate maintenance purposes. Respondent allowed $ 633 for such truck expenses and no depreciation deduction (Item I). Petitioners have not provided any further evidence concerning these items, and we hold that petitioners are not entitled to deductions in excess of those allowed by respondent. (d) Automobile Leasing Activities
Petitioners also claim that they were in the business of leasing automobiles during 1985. They purportedly leased three automobiles (a 1982 Chevette, a Datsun 200SX, and an Escort) from 1985 through 1987 (Items J, K, and L on Schedule E). The lease charges equal the amounts of petitioners' monthly car payments. Respondent determined that, under section 183, *259 the leases were not entered into for profit. At trial, respondent conceded that petitioners should be allowed lease expense deductions to the extent of the reported income. Petitioners and the Court accepted this concession. We hold that no further amounts are allowable for Items J, K, and L. 4. Other Adjustments in Notice of Deficiency
As set out in the statement of issues above, the notice of deficiency made other adjustments to petitioners' 1985 tax return. These included the disallowance of Mrs. Schaeffer's payment to an IRA and the disallowance of petitioner's "Keogh Plan" deduction of $ 320. No evidence has been submitted in regard to these items. Petitioners have either conceded these items or have failed to sustain their burden of proof. Rules 142(a), 149(b); Welch v. Helvering, 290 U.S. 111, 115 (1933). We therefore sustain respondent's determination. 1986 and 1987 Taxable Years
Although they claim to have documentation, petitioners have refused to provide any documents to the IRS for the audits relating to the taxable years 1986 and 1987. Respondent issued some seven Information Document Requests (IDRs) to petitioners, *260 to which they failed to respond. In early May 1990, the IRS issued and served an administrative summons for the production of documents relating to petitioners' 1986 and 1987 returns. That summons was directed to both petitioners at the Lakewood, Ohio, address, and the date of issuance was improperly omitted by Revenue Agent Pataky. On May 29 and 30, 1990, respectively, Pataky issued a summons to petitioner at his then Effingham, Illinois, address and to Mrs. Schaeffer at the Lakewood, Ohio, residence. These administrative summonses required petitioners to produce substantiation for various items claimed on their 1986, 1987, and 1988 returns. Petitioners failed to produce any of the documents, although they claim to have such documents which they say are in the possession of Hill, their counsel in this proceeding. The IRS did not seek to enforce these summonses in the local United States District Courts. On December 28, 1990, respondent issued the statutory notice of deficiency for the years 1985 (discussed above), 1986, and 1987. Other than adjustments based on third-party sources and documents furnished for the 1984 and 1985 audits, respondent disallowed petitioners' various *261 claimed deductions and losses as unsubstantiated. At the trial in this Court, petitioners persisted in their refusal to produce any documentation for 1986 and 1987. Petitioners seem to argue that respondent had an obligation to enforce the summonses in District Court for document production. Petitioners contend that, since respondent failed to seek enforcement of the summonses, the notice of deficiency subsequently issued, which disallowed all unsubstantiated deductions, was without rational foundation and was arbitrary and capricious. Petitioners complain that respondent has "forced them into the Tax Court", and that the burden of going forward with the evidence should be placed on respondent. Petitioners bear the burden of establishing that the notice of deficiency is arbitrary. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1378 (7th Cir. 1990), affg. Malicki v. Commissioner, T.C. Memo. 1988-559; Zuhone v. Commissioner, 883 F.2d 1317, 1325 (7th Cir. 1989), affg. T.C. Memo. 1988-142; *262 see United States v. Walton, 909 F.2d 915, 918 (6th Cir. 1990). Petitioners have not sustained that burden. To support their argument that the notice was arbitrary, petitioners merely point to the fact that respondent did not seek to enforce the summonses in the District Court. [10]
When a taxpayer refuses to provide requested documents, respondent has the authority to summon the production of documents. Specifically, section 7602 provides: (a) Authority to Summon, Etc. -- For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the *263 liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -- (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
Under section 7604(b), respondent may seek to enforce the summons in District Court; however, respondent need not exercise this discretionary power. The party *264 that has been summoned remains obligated to produce the requested documents. As this Court pointed out over 20 years ago, "Nor do we know of any rule of law which requires the Internal Revenue Service to seek a court order under section 7604 to compel the production of withheld records as a condition of the disallowance of claimed deductions for lack of substantiation." Figueiredo v. Commissioner, 54 T.C. 1508, 1513 (1970), affd. in an unpublished order (9th Cir. 1973). Deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to the deductions and rental losses they have claimed. Deputy v. Du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Burnet v. Houston, 283 U.S. 223, 227 (1931). When petitioners failed to respond to the document requests or to comply with the summonses, respondent was within her rights to determine that petitioners were not allowed to deduct unsubstantiated items for 1986 and 1987 and to issue a notice of deficiency. A statutory notice of deficiency *265 normally is entitled to a presumption of correctness, and, except where provided in the Internal Revenue Code or the Tax Court Rules of Practice and Procedure, places the burden of proof and the burden of going forward with the evidence on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). [11] *266 When a taxpayer fails or refuses to produce books and records to substantiate deductions that are peculiarly within his own knowledge and control, he cannot complain that respondent's determination is arbitrary and excessive. Pfluger v. Commissioner, 840 F.2d 1379, 1382-1383 (7th Cir. 1988), affg. T.C. Memo. 1986-78; Estate of Mason v. Commissioner, 64 T.C. 651, 658 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Estate of Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); Figueiredo v. Commissioner, 54 T.C. at 1513. [12]
Section 6212(a) provides in part that "If the Secretary determines that there is a deficiency in respect of any tax imposed * * * he is authorized to send notice of such deficiency * * *". The notice must advise the taxpayer that the Commissioner has determined a deficiency for a particular year and must specify the amount of the deficiency or give information necessary to compute the deficiency. Portillo v. Commissioner, 932 F.2d 1128, 1132 (5th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1990-68; Donley v. Commissioner, 791 F.2d 383, 384 (5th Cir. 1986); Benzvi v. Commissioner, 787 F.2d 1541, 1542 (11th Cir. 1986); Foster v. Commissioner, 80 T.C. 34, 229-230 (1983), affd. in part and vacated in part 756 F.2d 1430 (9th Cir. 1985). However, a notice of deficiency need not explain how deficiencies were determined. Scar v. Commissioner, 814 F.2d 1363, 1367 (9th Cir. 1987), *267 revg. 81 T.C. 855 (1983); Commissioner v. Stewart, 186 F.2d 239, 242 (6th Cir. 1951), revg. a Memorandum Opinion of this Court dated Dec. 19, 1949; Powers v. Commissioner, 100 T.C. 457 (1993); Campbell v. Commissioner, 90 T.C. 110, 115 (1988). Here, the statutory notice of deficiency for 1986 and 1987 was, in fact, quite detailed in its explanations and computations. Petitioners nonetheless argue that the Court should find that this statutory notice of deficiency was arbitrary. They are asking us to look behind the notice of deficiency to examine the method and evidence that the Commissioner used in making the determination. Riland v. Commissioner, 79 T.C. 185, 201 (1982); Jackson v. Commissioner, 73 T.C. 394, 400 (1979). This Court generally will not look behind the notice of deficiency to examine the procedures leading to the determination. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). *268 We have looked behind the statutory notice in rare cases that involved illegal unreported income in which respondent did not introduce any substantive evidence of unreported income but rested solely on the presumption of correctness. United States v. Janis, 428 U.S. 433, 441 (1976); Greenberg's Express, Inc. v. Commissioner, supra at 328. Based on the record before us, we hold that this is not an appropriate case for looking behind the notice of deficiency or for shifting the burden of going forward with the evidence to respondent. This case does not involve respondent's making allegations of illegal unreported income and putting petitioner in the difficult position of trying to prove a negative. This case involves respondent's requests for documents substantiating the deductions and rental losses claimed by petitioners on their tax returns, petitioners' refusal to produce those records, and the issuance of a notice of deficiency disallowing unsubstantiated deductions and rental losses. The substantiation of deductions, unlike the denial of unreported income, requires proof of the positive and proof that is peculiarly *269 within the knowledge and control of petitioners themselves. A taxpayer is required by the tax laws of this country to keep records of the expenditures he makes and subsequently deducts from his gross income. Sec. 6001. Respondent is certainly within her rights to require proof of the deductibility and amounts claimed as deductions. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Furthermore, respondent was within her rights to issue the notice of deficiency disallowing the deductions and rental losses in the face of petitioners' continuing refusal to produce books and records. Unfortunately, petitioners also have not availed themselves of the opportunity to produce any books and records in this Court for our redetermination of petitioners' tax liability for 1986 and 1987. Despite the Court's repeated efforts to explain that trials in the Tax Court are de novo and that our redetermination of a taxpayer's liability is based upon the record presented to us, no evidence or documentation of any kind was presented to substantiate the deductions and rental losses claimed on the *270 1986 and 1987 tax returns. We are unable to do anything other than sustain respondent's determination when petitioners do not cooperate in presenting the evidence that only they possess. When taxpayers choose to appear before the Tax Court with no documentation whatsoever to substantiate deductions, we are unable to invoke the Cohan rule and estimate any expenses and deductions to which they may be entitled. Lerch v. Commissioner, 877 F.2d 624, 627-629 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Pfluger v. Commissioner, 840 F.2d at 1382, 1386. Application of the Cohan rule is appropriate only when the taxpayer claims a deduction and respondent recognizes that the taxpayer has a legitimate claim to the deduction, but the taxpayer has failed to establish exactly how much that deduction ought to be. Oates v. Commissioner, 316 F.2d 56, 59 (8th Cir. 1963); see also supra note 5. We cannot protect taxpayers from the results of their own (or their counsel's) obstinacy. See Lerch v. Commissioner, 877 F.2d at 629. Therefore, *271 we must sustain respondent's determinations for the taxable years 1986 and 1987. Additions to Tax
1. Negligence
Respondent has determined that petitioners are liable for additions to tax under section 6653(a). For the taxable years 1984 and 1985, section 6653(a)(1) imposes an addition to tax if any part of an underpayment of income tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition in the amount of 50 percent of the interest due on that portion of the underpayment attributable to the negligence or intentional disregard. For the taxable years 1986 and 1987, section 6653(a)(1)(A) and (B) imposes similar additions. Petitioners filed joint Federal income tax returns for the taxable years 1984 through 1987. Petitioner personally prepared the joint income tax returns for the years 1984, 1985, 1986, and 1987. It was his practice to purchase tax literature and commercial tax books. Petitioners deducted the following amounts on Schedule A of their 1984 return: Attorney fees tax planning
$ 837.50  EF Hutton financial planning fee
1,100.00
Computer tax preparer, Howard
Soft Tax Preparer, and tax books 430.87
Total
$ 2,368.37
*272 For 1985 petitioners deducted $ 116.92 for "Tax return preparation expenses (software, etc.) + forms." Petitioner testified that he spent $ 25 to $ 50 on tax books each year. Petitioners' 1984 return understated taxable income by over $ 50,000 and their 1985 return understated taxable income by over $ 40,000. Their 1986 and 1987 returns understated taxable income by over $ 89,000 and over $ 27,000, respectively. For all years the understatements of income were principally due to unsubstantiated deductions. Respondent's determination of additions to tax under section 6653(a) is presumed correct and must be sustained unless the taxpayer can establish that he or she was not negligent. Hall v. Commissioner, 729 F.2d 632 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Petitioners bear the burden of proving that the underpayment of tax for the taxable years at issue was not due to negligence or intentional disregard of rules or regulations. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Bixby v. Commissioner, 58 T.C. 757 (1972). "Negligence is lack of due care *273 or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners assert that respondent is employing an improper subjective standard in evaluating petitioners' preparation of their returns. They state that respondent's focus upon petitioner's educational background and his purchases of tax and financial planning books should not bear upon the imposition of the negligence addition. We agree that these factors are not determinative, but they are to be considered. Petitioners argue that objective inquiries, such as the amount of and source of petitioners' income, the nature and extent of professional, business, and investment activities, results of past examinations, and the relative complexity of the law applicable to petitioners' financial activities, should be considered in determining whether petitioners acted reasonably under the circumstances. The objective standard, however, refers to what a reasonable or ordinarily prudent person would do under all of the facts *274 and circumstances of the case. Howard v. Commissioner, 931 F.2d 578, 582 (9th Cir. 1991), affg. T.C. Memo. 1988-531. Petitioners contend that the several large adjustments made on petitioners' returns were due to "an honest misunderstanding of the law, not the lack of documentation". The record does not establish the nature, or even the existence, of any such misunderstanding of the law. Respondent does not question petitioners' recordkeeping. In fact, respondent comments that petitioners' ability to retain and maintain records was remarkable. Respondent asserts, however, that the problem is not an honest misunderstanding of the law, but petitioners' choice of disregarding it. Petitioners argue on brief that most of the adjustments made to their returns were not due to lack of substantiation but rather to nondeductibility. Petitioners' educational backgrounds are to be taken into consideration in determining whether petitioners acted reasonably under the circumstances. See Vick v. Commissioner, T.C. Memo. 1984-353. It is hard to imagine that, for example, petitioner could understand *275 and undertake a computation of the depreciation tax preference for alternative minimum tax purposes, as he claims to have done, yet could merely misunderstand the law and deduct personal expenses, such as eyeglasses and a watch, as business expenses. Petitioners contend that the negligence addition should not apply because similar deductions had been allowed in prior years, and petitioners were merely continuing an accepted practice. They argue that, because adjustments were not made for these items in prior years, the IRS sanctioned their deductibility. That argument is not well taken. Each tax year stands on its own and must be separately considered. United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969). Respondent is not bound in any given year to allow a deduction permitted in a previous year. Lerch v. Commissioner, 877 F.2d at 627 n.6; Knights of Columbus Council No. 3660 v. United States, 783 F.2d 69 (7th Cir. 1986); Corrigan v. Commissioner, 155 F.2d 164 (6th Cir. 1946). Taxpayers have no right to continue a prior tax treatment that was wrong, *276 either on the law or under the facts. Thomas v. Commissioner, 92 T.C. 206, 226-227 (1989). [13] "The mere fact that petitioner may have obtained a windfall in prior years does not entitle it to like treatment for the taxable year here in issue." Union Equity Cooperative Exchange v. Commissioner, 58 T.C. 397, 408 (1972), affd. 481 F.2d 812 (10th Cir. 1973). Moreover, there is no evidence of what items were reviewed and allowed during petitioners' previous audits. Through their audit experience, petitioners knew that all items were not reviewed in office audits. We do not think that they believed that all items claimed on prior returns were correct merely because they were not adjusted during the office audits. In any event, substantiation or lack thereof generally would be different for each tax year. The record supports the negligence *277 additions in this case. Petitioners were negligent in deducting their personal expenses and in overstating amounts of deductible items. The Court sustains respondent's determination of negligence in each year at issue. The entire underpayment in each year is attributable to negligence. 2. Substantial Understatements of Income Tax
Respondent also determined additions to tax under section 6661 for a substantial understatement of income tax each year. Section 6661 provides for an addition to tax of 25 percent of the amount of the underpayment of tax attributable to a "substantial understatement of income tax". A substantial understatement is defined as an amount that exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). There were such substantial understatements of income tax in 1984 and 1985. Since petitioners have presented no evidence for 1986 and 1987, we must sustain respondent's determination that substantial understatements existed for those years as well. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). An understatement, and hence the addition to tax, will be reduced *278 if the taxpayer's treatment of an item at issue was based upon substantial authority or if the relevant facts relating to the tax treatment of that item were adequately disclosed on the return or in a statement attached thereto. Sec. 6661(b)(2)(B)(i) and (ii). Petitioners do not come within either of the provisions that permit a reduction of the amount of the understatement. There is no substantial authority for petitioners' treatment of their expense deductions in 1984 and 1985 under section 6661(b)(2)(B)(i). Furthermore, the facts, which were peculiarly within petitioners' own personal knowledge, have not been revealed to the Court to support their claimed deductions for 1986 and 1987. Secondly, petitioners did not make adequate disclosure within the meaning of section 6661(b)(2)(B)(ii). The mere filing of schedules and forms with a tax return does not serve to disclose the underlying facts and true nature of petitioners' claimed deductions. Schirmer v. Commissioner, 89 T.C. 277, 284-286 (1987). [14] *279 The Court sustains the additions for substantial understatements of income tax for all of the years at issue. [15]
To reflect the above holdings, Decisions will be entered under Rule 155.
Footnotes
1. For 1986 and 1987 sec. 6653(a)(1)(A) applies.↩
2. For 1986 and 1987 sec. 6653(a)(1)(B) applies.↩
1. Petitioners have agreed to adjustments to their 1984 income totaling $ 52,861, total tax of $ 22,146, and a deficiency for that year of $ 13,240, which has been assessed and paid.↩
2. Petitioner testified that he and his wife paid $ 113,000 for their house in 1977. He ascertained the land base ratio from the county assessor's office and calculated the depreciation for the house using straight-line depreciation for 20 years. He then calculated the depreciation for his home office by calculating 9.09% (the percentage area of the home office in relation to the entire house) of the total depreciation figure.↩
3. Petitioner claims to have had teak chairs and venetian blinds in his home office. He apparently had these chairs repaired and deducted those costs under "repairs" and "supplies".↩
4. Despite Pataky's testimony, we have allowed this expenditure for a window fan because petitioner produced a contemporaneous receipt indicating price, date of purchase, and business purpose. He also testified that he used the fan in temperate weather to maintain ventilation in the office rather than using the air conditioner unnecessarily. This is a reasonable explanation of why Pataky did not see the window fan in the office in July.↩
5. Sec. 1.274-5, Income Tax Regs., supersedes the doctrine of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). That decision held that, where evidence indicated that a taxpayer incurred deductible travel or entertainment expenses but the exact amount could not be determined, the court should not disallow the deduction entirely but should make a close approximation of the deduction. "Section 274(d) contemplates that no deduction shall be allowed a taxpayer for such expenditures on the basis of such approximations or unsupported testimony of the taxpayer." Sec. 1.274-5(a), Income Tax Regs.↩
6. Prior to 1984, local business travel (i.e., travel not away from home) was not subject to the Sec. 274(d) substantiation requirements; rather, it fell within the more general substantiation standards of Sec. 162. Congress amended sec. 274(d) in sec. 179(b) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 713 (the 1984 Act), to require taxpayers to maintain "adequate contemporaneous records" and to bring the business use of automobiles (whether local or for travel away from home) and other "listed property" as defined in Sec. 280F(d)(4) under the substantiation requirements of sec. 274(d). In the Act of May 24, 1985, Pub. L. 99-44, 99 Stat. 77, Congress repealed the "contemporaneous" recordkeeping requirements of sec. 274(d) and restored prior law for 1985 as though the amendments made by sec. 179(b) of the 1984 Act had not been enacted for that year. Sec. 274(d), as amended by Pub. L. 99-44, applies to taxable years beginning after December 31, 1985. See H. Conf. Rept. 99-67 (1985), 1985-2 C.B. 359↩, 360. Thus, sec. 274(d) thereafter applies to local business travel, and such travel after 1985 must be substantiated by adequate records or sufficient evidence corroborating the taxpayer's own statement.
7. Petitioner claimed a deduction for the gift to a coworker whose name he drew for a Christmas exchange, although his name was also drawn and he also received a gift in return.↩
8. The allowable expenses include transportation (airplane and taxis), hotel, and meals.↩
9. The interest expense and real estate taxes allowed on Schedule A represent the disallowed one-half of the expenses for the duplex located at 1305 W. 105th Street claimed on Schedule E. Therefore, a full interest and real estate tax deduction has been allowed for the property located at 1305 W. 105th Street.↩
10. Petitioners' other arguments about purported violations of provisions of the IRS Manual warrant no discussion. Such materials are not the law, and there is no proof of any violations. Keado v. United States, 853 F.2d 1209, 1214 (5th Cir. 1988); see Thoburn v. Commissioner, 95 T.C. 132, 141-142↩ (1990), and cases cited therein.
11. See also Knoff v. Commissioner, T.C. Memo. 1992-624↩.
12. See also DeCoite v. Commissioner, T.C. Memo. 1992-665↩.
13. See also Greene v. Commissioner, T.C. Memo. 1992-202↩.
14. See also Horwich v. Commissioner, T.C. Memo. 1991-465↩.
15. Pursuant to section 6661(c), respondent may waive the addition to tax for substantial understatement. However, such waiver is discretionary, not mandatory. See Mailman v. Commissioner, 91 T.C. 1079, 1082-1084↩ (1988). Petitioners have not introduced any evidence that respondent has abused her discretion in this case. On this record, we hold that respondent has not abused her discretion in this matter.